STATE EMPLOYEES ASSOCIATION v DEPARTMENT OF
MANAGEMENT AND BUDGET

ASSOCIATION OF GOVERNMENTAL EMPLOYEES v
DEPARTMENT OF MANAGEMENT AND BUDGET

Docket Nos. 74503-74505. Argued October 8, 1986 (Calendar No. 6).
Decided April 27, 1987.

The Michigan State Employees Association brought actions under
the Freedom of Information Act in the Ingham Circuit Court
against the Department of Management and Budget, seeking to
compel disclosure of the names and home addresses of certain
civil service employees. The court, Jack W. Warren, J., granted
summary judgments for the plaintiff, ordering disclosure.

The Michigan Association of Governmental Employees brought
an action under the Freedom of Information Act in the Ingham
Circuit Court against the Department of Management and
Budget, seeking disclosure of the names and home addresses of
supervisory, managerial, and confidential classified employees
excluded from collective bargaining rights. The court, James R.
Giddings, J., granted summary judgment for the plaintiff, or-
dering disclosure.

The cases were consolidated in the Court of Appeals, and
thereafter the Court, DANHOF, C.J., and R. B. BURNS and
GRIBBS, JJ., affirmed in an opinion per curiam (Docket Nos.
72112, 72113, 72179). The defendant appeals.

In opinions by Justice CAVANAGH, joined by Justices LEVIN
and ARCHER, and by Justice BRICKLEY and Justice BOYLE, the
Supreme Court held:

The names and addresses of the state employees in these
cases are not exempt from disclosure under the Freedom of
Information Act.

Justice CAVANAGH, joined by Justices LEVIN and ARCHER,
stated that disclosure of the home addresses of the governmen-
tal employees is not a clearly unwarranted invasion of privacy
under the Michigan Freedom of Information Act.

1. The Michigan Freedom of Information Act is a disclosure
statute, entitling the public to full and complete information
regarding the affairs of government and the official acts of
public officials and public employees. Among public records

exempt from disclosure are those containing information of a personal nature the disclosure of which would constitute a clearly unwarranted invasion of an individual's privacy. Neither a balancing of the interests of a party requesting information and those of the governmental agency, nor consideration of the requester's identity or the purpose for which the information will be used is appropriate. All that is required is a determination of whether the release of the requested information would be a clearly unwarranted invasion of an individual's privacy. The right of privacy is not defined in the act, requiring determination by the trial court, on the basis of scrutiny of the particular facts of each case in light of the principles of privacy developed under the common law and the state constitution, of whether ordinarily impersonal information takes on an intensely personal character justifying nondisclosure.

2. In these cases, the defendant is a public body, subject to the act's provisions, and the parties concede that the requested materials are public records. There is no common-law or constitutional right of privacy in the requested information, and, thus no invasion of privacy in disclosure.

Justice BRICKLEY, concurring in part and dissenting in part, stated that because the information requested in this case does not amount to information of a personal nature under the privacy exemption, thereby rendering the exemption inapplicable, there is no need to balance the public and private interests presented. Where appropriate, balancing provides a means of assessing whether an invasive disclosure is clearly unwarranted. Section 13(1)(a) requires a balancing not of two public interests, but of the privacy interest in information of a personal nature and the public interest in disclosure. Only when information is determined to be of a personal nature is a balancing of public and private interests undertaken to determine if disclosure would amount to a clearly unwarranted invasion of privacy. Factors that have been considered in making that determination are: the scope of the information sought, the circumstances of the persons to whom the information relates, and any specific promises of confidentiality made to the persons.

Justice BOYLE, concurring in part and dissenting in part, stated that under the FOIA, the presumption in favor of disclosure of requested information is clear. When a request for information is initially made, the identity of the requester and the need or purpose for the request need not be provided. However, where it is determined that the information sought is of a personal nature, and thus potentially exempt under the

act, balancing of the intensely personal characteristics of the information against the purpose for which the information is sought and for which it may be used, and against the efficacy of restrictions upon disclosure where partial nondisclosure appears necessary, is required to determine whether disclosure would constitute a clearly unwarranted invasion of a person's privacy.

Affirmed.

Chief Justice RILEY, dissenting, stated that application of a judicial balancing test is appropriate in determining which public records may be exempted from disclosure under § 13(1)(a) of the Michigan Freedom of Information Act. The core purpose of the act, to afford all persons full and complete information regarding the affairs of government and the official acts of public officials in order to enable full participation in the democratic process, must be considered in weighing the public interest. The greater the tendency that release of certain information will have in furthering this purpose, the more the scale should tip in favor of disclosure. In this case, when the public interest is balanced against the employees' privacy interests, the furnishing of the employees' home addresses amounts to a clearly unwarranted invasion of privacy. Disclosure would do little to further the core purpose of the act, but, rather, would inure to the benefit of the unions in a proprietary sense. It would not inform the requesters of the affairs of government or of the official acts of public officials or employees, nor would it facilitate participation in the democratic process.

Justice GRIFFIN took no part in the decision of this case.

135 Mich App 248; 353 NW2d 496 (1984) affirmed.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh* and *Laura E. Hazen*), for plaintiff Michigan State Employees Association.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *Maurice E. Schoenberger* and *Michael G. Lofgren*), for plaintiff Michigan Association of Governmental Employees.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Susan Peck Iannotti,* Assistant Attorney General, for the defendant.

Amici Curiae:

*Jordan Rossen,* General Counsel, and *Richard W. McHugh,* Associate General Counsel, for International Union, UAW.

*Miller, Cohen, Martens & Ice, P.C.* (by *Bruce A. Miller*), for Michigan State AFL-CIO.

Cavanagh, J. The issue presented is whether the disclosure of the home addresses of certain governmental employees constitutes a clearly unwarranted invasion of privacy under Michigan's Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* We would hold that such disclosure does not amount to a clearly unwarranted invasion of privacy, and thus we would affirm the decision of the Court of Appeals requiring defendant to disclose the employees' home addresses.

### I. FACTS

This case is a consolidation of three separate suits. Plaintiff Michigan State Employees Association (MSEA) is the exclusive labor representative of approximately 26,000 classified civil service employees employed in four bargaining units of the state civil service system. In March, 1983, MSEA requested from defendant Department of Management and Budget the "unit list" for the civil service's business and administrative bargaining unit, and the service's institution bargaining unit. MSEA requested that the unit list contain, among other items, each employee's name and home address.

Plaintiff Michigan Association of Governmental Employees (MAGE) is an employee organization which has been granted limited recognition rights, under the Michigan Civil Service Commission's

employee relations policy rule, to represent interested supervisory, managerial, and confidential classified state employees. Such employees are excluded from collective bargaining rights under that same policy rule. In January, 1983, MAGE requested that defendant provide it with the names and home addresses of all employees classified as excluded employees under the civil service employee relations policy rule.

Both MSEA and MAGE based their requests on the Michigan Freedom of Information Act.[1] In response to plaintiffs' requests, defendant offered to provide them with all of the requested information except the employees' home addresses, claiming the disclosure of that information would be an unwarranted invasion of personal privacy under § 13(1)(a) of the act.

Upon denial of their requests, plaintiffs initiated three actions in circuit court. Three summary judgments were entered, requiring defendant to provide the requested information. After consolidating the cases, the Court of Appeals affirmed. 135 Mich App 248; 353 NW2d 496 (1984). We then granted defendant's application for leave to appeal. 424 Mich 876 (1986).

## II. BACKGROUND

The Michigan Freedom of Information Act begins with the following preamble:

AN ACT to provide for public access to certain public records of public bodies; to permit certain

---

[1] Hereinafter referred to as "the act" or "the FOIA." Prior to the enactment of the FOIA in 1976, the public's right to access to public records was judicially recognized. See, e.g., *Burton v Tuite,* 78 Mich 363, 375-376; 44 NW 282 (1889); *Booth Newspapers v Muskegon Probate Judge,* 15 Mich App 203, 205; 166 NW2d 546 (1968), lv den 382 Mich 762 (1969).

fees; to prescribe the powers and duties of certain public officers and public bodies; to provide remedies and penalties; and to repeal certain acts and parts of acts.

The act then continues with a statement of public policy and a disclosure requirement:

It is the public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [MCL 15.231(2); MSA 4.1801(1)(2).]

This Court has consistently recognized that the FOIA, like its federal counterpart, is a disclosure statute.[2] The public body which denies a request has the burden of showing that the requested information falls within one of the act's exemp-

---

[2] *Kestenbaum v MSU,* 414 Mich 510, 521; 327 NW2d 783 (1982), reh den 417 Mich 1103 (1983); *Tobin v Civil Service Comm,* 416 Mich 661, 668; 331 NW2d 184 (1982); *UPGWA v Dep't of State Police,* 422 Mich 432, 443; 373 NW2d 713 (1985).

See also Easterbrook, *Privacy and the optimal extent of disclosure under the Freedom of Information Act,* 9 J Legal Stud 775, 776-777 (1980), where University of Chicago Law Professor Easterbrook noted:

The strength of the FOIA's prodisclosure presumption is demonstrated by the rule that any document must be disclosed unless there is explicit authorization for withholding. The privacy exemption (exemption 6) allows withholding only when necessary to prevent "clearly unwarranted" invasions of privacy. There are two built-in administrative biases in favor of disclosure. First, the exemptions are permissive; they allow withholding but never require it. Second, although sanctions are available to penalize an official who improperly withholds a document, there are no sanctions for wrongful release of a document.

The above comments regarding the federal FOIA equally apply to Michigan's act. See MCL 15.235(3); MSA 4.1801(5)(3).

tions.[3] The public's right to "full and complete" disclosure is limited only by the twenty exemptions found in § 13 of the act. MCL 15.243; MSA 4.1801(13). The exemptions are to be narrowly construed.

The sole provision asserted by defendant to justify its decision to withhold the requested information is the privacy exemption:

> Sec. 13. (1) A public body may exempt from disclosure as a public record under this act:
> (a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy. [MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).]

Three recent opinions of this Court involve § 13's privacy exemption. In two, *Kestenbaum v Michigan State Univ,* 414 Mich 510; 327 NW2d 783 (1982), reh den 417 Mich 1103 (1983), and *UPGWA v Dep't of State Police,* 422 Mich 432; 373 NW2d 713 (1985), the judgments of the Court of Appeals were affirmed by an equally divided Court. The opinions within each of those two cases will be separately discussed, to highlight the various rationales used by the justices in reaching their conclusions.[4]

In *Kestenbaum v MSU, supra,* the plaintiff re-

---

[3] Under § 10 of the act, a person whose request for information is denied has a right to review de novo in circuit court:

> The [circuit] court shall determine the matter de novo and the burden is on the public body to sustain its denial. [MCL 15.240; MSA 4.1801(10).]

[4] The remaining Michigan Supreme Court privacy exemption case, *Tobin v Civil Service Comm,* n 2 *supra,* involved a "reverse" FOIA claim, where plaintiffs sought to prevent, rather than compel, disclosure of public records. That case will be discussed in the analysis section of this opinion.

quested a copy of the magnetic computer tape which defendant MSU used to produce its student directory. Relying on the FOIA, the plaintiff explained that he wanted to facilitate political mailings in connection with an upcoming election. The defendant refused the request, but offered to provide the plaintiff with a copy of the student directory as soon as it was published, or an immediate printout of the information on the tape.[5]

The Court of Appeals reversed the circuit court's order that defendant create a duplicate magnetic tape for plaintiff.[6] The Court relied on the privacy exemption in § 13(1)(a) of the FOIA. The Court also held that the release of the computer tape would violate the constitutional prohibition against public funds being used to support a private purpose.[7] The decision of the Court of Appeals was affirmed by an equally divided court.

Chief Justice Fitzgerald, joined by Justices Williams and Coleman, held that the release of the magnetic tape containing the names and addresses of students would constitute a clearly unwarranted invasion of privacy. The Court noted:

> [T]here has remained throughout this country's legal history one recognized situs of individual control—the dwelling place. Without exception, this bastion of privacy has been afforded greater protection against outside assaults than has any other location. [*Kestenbaum, supra,* p 524.]

[5] Defendant's denial was based on an exemption in the Family Educational Rights and Privacy Act (Buckley Amendment; PL 90-247, tit IV, § 438 as amended; 20 USC 1232g, 45 CFR 99.1 *et seq.*), not the privacy exemption in the FOIA.

[6] The trial court ruled that defendant could delete all the information on the tape except the names and addresses of students. Further, plaintiff was to make no use of the tape other than for political mailings.

[7] Const 1963, art 9, § 18. 97 Mich App 5, 22-23; 294 NW2d 228 (1980).

The Court then reasoned:

> [A]ny intrusion into the home, no matter the purpose or the extent, is definitionally an invasion of privacy. *A fortiori,* the release of names and addresses constitutes an invasion of privacy, since it serves as a conduit into the sanctuary of the home. [*Kestenbaum, supra,* pp 524-525.]

In reaching its decision, the Court noted that in *Dep't of the Air Force v Rose,* 425 US 352, 372; 96 S Ct 1592; 48 L Ed 2d 11 (1976), the United States Supreme Court endorsed a balancing test in its review of the federal privacy exemption.

Further, in denying the plaintiff's request, the Court considered the form in which the plaintiff had requested the information be provided, that is, on a magnetic tape.

> Form, not just content, affects the nature of information. Seemingly benign data in an intrusive form takes on quite different characteristics than if it were merely printed.
>
> The very existence of information in computer-ready form may serve to motivate an invasion of privacy. [*Kestenbaum, supra,* p 532.]

The Court concluded that the release of names and addresses on a magnetic tape was a more serious invasion of privacy than disclosure in directory form. 414 Mich 532.

Justice RYAN, joined by Justices KAVANAGH and LEVIN, dissented. That opinion held that the act's statement of public policy[8] should not be interpreted as providing an independent basis for denying disclosure for requested public records which do not inform the public about the "affairs of government." 414 Mich 540-541. Justice RYAN

---

[8] MCL 15.231; MSA 4.1801(1).

cited several provisions of the act to support his conclusion that there was a presumption in favor of disclosure, without the additional need to prove that the release of the requested information was for public use, or would further the general public interest. 414 Mich 540-542. He noted that persons freely released their home addresses daily, and that such information is typically not personal, intimate, or embarrassing. 414 Mich 546-547.

> We leave for another day the question whether, in certain unusual circumstances, ordinarily impersonal information might take on an intensely personal character. [414 Mich 547.]

Finally, Justice Ryan disagreed with Justice Fitzgerald that the form in which the requested information was stored was relevant.

> We cannot accept the conclusion that the Legislature intended to allow a public body to exempt otherwise public records from disclosure by the simple expedient of converting the public record from one form to another. Surely such a result would exalt form over substance. The plain language of the statute reveals a legislative intent to treat all governmental "writings" in the same fashion regardless of form. MCL 15.232(e); MSA 4.1801(2)(e). [414 Mich 557.]

In *UPGWA v Dep't of State Police, supra,* the United Plant Guard Workers of America requested reports from the defendant which contained the names and addresses of guards employed by private security guard agencies. The circuit court ordered disclosure and the Court of Appeals affirmed. This Court affirmed by equal division. Justice Levin, with Justice Boyle concurring, declined to determine whether the FOIA required the

courts to balance the benefits of disclosure against the intrusion of privacy, or whether a court should measure only the nature and extent of the asserted privacy invasion. 422 Mich 440. Justice Levin found that it was unnecessary to make this determination because under either approach, the disclosure of the requested information would not constitute a clearly unwarranted invasion of privacy. The opinion nonetheless concluded that four interests would be involved in the case if a balancing test were applied:

> the interests of the requester, the general public, the "benefited addressees" (addressees whose benefit from the contact exceeds their privacy loss), and the "harmed addressees" (addressees whose privacy loss exceeds their benefit from contact). [422 Mich 446-447.]

After balancing each interest involved, Justice Levin concluded that

> the state has failed to meet its burden of demonstrating that the requested information is so personal and private that the address lists should not be disclosed. [422 Mich 453-454.]

Justice Ryan wrote separately to support the disclosure of the names and addresses. Noting that his views regarding the FOIA and the privacy exemption were set forth in *Kestenbaum,* he emphasized that nondisclosure under that exemption was appropriate only when there was a clearly unwarranted invasion of privacy:

> If revelation of the information is merely an invasion of privacy, disclosure is required. If revelation is arguably an unwarranted invasion of privacy, disclosure is still required. It is only when the privacy invasion is clearly unwarranted that the exception provision of § 13 is an obstacle to revelation. [422 Mich 458.]

In *UPGWA,* Justice RYAN did not conclude that one's name and address was "information of a personal nature" within the meaning of § 13(1)(a). Therefore, he found no invasion of privacy, much less one which was clearly unwarranted. *Id.*

Justice RILEY, joined by Justice WILLIAMS, dissented. She first referred to the balancing test of *Dep't of the Air Force v Rose,* which weighed the public interest in disclosure against the invasion of privacy. Acknowledging that it was not clear what public interest was to be weighed, Justice RILEY concluded that the Michigan FOIA policy statement must be used in defining the "public interest" side of the scale. "The more the release of the information would further the core purpose of the act, the more the scale will tip in favor of disclosure." 422 Mich 461. Applying the balancing test, Justice RILEY concluded that the privacy interest at stake outweighed the public interest and amounted to a clearly unwarranted invasion of privacy. 422 Mich 463.

Justice BRICKLEY wrote separately to concur with Justice RILEY. He noted that the information contained private facts which the security guards provided defendant under a promise of confidentiality. 422 Mich 469. He found that the public interest in disclosure of the names and addresses was minimal, possibly nonexistent. Justice BRICKLEY employed a balancing test in concluding that the privacy exemption applied to preclude disclosure.

### III. ANALYSIS

#### A. APPLICABILITY OF THE FOIA

The Department of Management and Budget is a legislatively created agency in the executive

branch of the state government,[9] and thus is a public body subject to the act's provisions. In addition, the arguments of both parties proceed on the assumption that the requested personnel lists are public records, as defined in § 2 of the FOIA, i.e., "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created."[10] We accept this concession in addressing the issue before us. Finally, defendants acknowledge that they are in possession of the public records which plaintiffs seek to obtain.

### B. THE PRIVACY EXEMPTION

#### 1. A JUDICIAL BALANCING TEST IS INAPPROPRIATE

Section 2(c) of the FOIA expressly divides public records into two classes, "those which are exempt from disclosure," and "all others, which shall be subject to disclosure under this act."[11] It would do violence to the legislative intent to judicially create a third class of public records, those that should be disclosed if an unspecified balancing test weighs in favor of disclosure. Such an approach is inappropriate in light of several considerations, the first of which involves an examination of the origins of the balancing test at the federal level.

The federal FOIA provision which most closely resembles the privacy exemption later enacted in our state provides that the FOIA does not apply to

personnel and medical files and similar files the

---

[9] MCL 16.200; MSA 3.29(100), repealed and replaced by 1984 PA 431, MCL 18.1101 *et seq.;* MSA 3.516(101) *et seq.*

[10] MCL 15.232(c); MSA 4.1801(2)(c).

[11] *Id.*

disclosure of which would constitute a clearly unwarranted invasion of personal privacy.[12]

The United States Supreme Court interpreted the above provision in *Dep't of Air Force v Rose, supra,* where respondents, law students, sought access to case summaries of Air Force Academy honor and ethics hearings. One of the exemptions[13] under which the Air Force withheld the requested information was the federal act's sixth exemption, quoted above. In finding that the information was not exempt under that exception, the United States Supreme Court discussed a balancing of interests.[14]

It is appropriate to look to federal case law when interpreting a state statute which parallels its federal counterpart. *Kestenbaum, supra,* p 525. Certainly, similar policy concerns underlie both the federal FOIA and Michigan's FOIA. In the past, Michigan courts have read *Rose* as adopting a judicial balancing test, and have thus applied one themselves in evaluating Michigan's privacy exemption.[15] We do not read *Rose* as mandating a judicial balancing test, however. Rather, it seems the *Rose* Court, in discussing a balancing of interests, was simply summarizing the legislative history which resulted in the requirement that an invasion be "clearly unwarranted" before exemption 6 is applicable.

[12] 5 USC 552(b)(6).

[13] The petitioner unsuccessfully tried to withhold the information under the act's second exemption, also. 5 USC 552(b)(2).

[14] The United States Court of Appeals had already discussed a balancing of interests in *Getman v NLRB,* 146 US App DC 209; 450 F2d 670 (1971), one of the earliest "exemption 6" cases.

[15] See the individual opinions in the cases discussed in section II. Panels of the Court of Appeals have also applied a balancing test pursuant to *Rose.* See, e.g., *Penokie v MTU,* 93 Mich App 650; 287 NW2d 304 (1979); *Mullin v Detroit Police Dep't,* 133 Mich App 46; 348 NW2d 708 (1984).

For example, in one of its repeated references to the House and Senate reports which preceded adoption of the federal act, the Court quoted from a House report which stated:

> The limitation of a "clearly unwarranted invasion of personal privacy" *provides a proper balance* between the protection of an individual's right of privacy and the preservation of the public's right to Government information . . . .[16] [Emphasis added.]

In other words, the balance was struck by Congress. It was not left for the courts to remeasure. The *Rose* Court seemed to agree with this conclusion. In discussing the legislative intent behind exemption 6, the Court noted:

> Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act . . . . [425 US 372.]

The Court's reference to a balancing must be considered in light of the statement which follows it:

> The *device adopted to achieve that balance* was the limited exemption, where privacy was threatened, for "clearly unwarranted" invasions of personal privacy. [425 US 372. Emphasis added.]

*Rose* did say, quoting from the legislative history, that Congress enunciated a policy to be enforced "by the courts, 'that will involve a balancing' of the private and public interests."[17] This, we

---

16 425 US 372, quoting HR Rep No 1497, p 11.
17 425 US 373, quoting HR Rep No 1497, p 11.

suggest, was inadvertent writing which did not accurately reflect the considerations actually used by the Court in disposing of the issue before it. Nowhere did the Court place opposing considerations on a scale to determine whether disclosure outweighed nondisclosure. The Court's focus was on whether the information requested met the criteria of the exemption. This is not a balancing test as we understand it.

We recognize that federal decisions have read *Rose* as mandating a balancing of interests.[18] The use of a balancing test at the federal level has met with criticism, however:

> While such a balancing of public and private interests may be beneficial and perhaps essential in other situations, this approach in the context of the FOIA in general, and exemption 6 in particular, seems neither necessary nor desirable. Semantically, qualification of "invasion of privacy" by the phrase "clearly unwarranted" may appear to compel a weighing of the public worth in disclosure against infringement upon the private interest. Yet, this statutory language reflects a carefully considered congressional policy favoring disclosure, and the nature of the balancing seemingly necessitated by the phraseology should not be lightly assumed. Relevant portions of the legislative history of the exemption suggest that the weighing which Congress intended did not necessarily entail inquiry beyond the seriousness of the privacy invasion.[19]

---

[18] See, e.g., *American Federation of Government Employees, Local 1760 v Federal Labor Relations Authority*, 786 F2d 554 (CA 2, 1986); *Ripskis v HUD*, 241 US App DC 8; 746 F2d 1 (1984); *American Federation of Government Employees, Local 1923 v Dep't of Health & Human Services*, 712 F2d 931 (CA 4, 1983); *Washington Post Co v Dep't of Health & Human Services*, 223 US App DC 139; 690 F2d 252 (1982).

[19] Note, *Invasion of privacy and the Freedom of Information Act: Getman v NLRB*, 40 Geo Wash L R 527, 534 (1972).

Moreover, we are not bound by cases interpreting the federal statute because we are interpreting Michigan's FOIA. There are significant differences between the federal and state act which make reliance on the federal cases of limited value, and which support our rejection of a balancing test in applying Michigan's privacy exemption.

Section 13 of the Michigan FOIA enumerates extensive and detailed exemptions from disclosure. In four narrow exemptions not applicable here, § 13 specifies a balancing test which requires weighing the public interest in disclosure against the public interest in nondisclosure.[20] In addition, another exemption expressly requires a balancing of the public interest in encouraging frank communications between state officials and employees against the public interest in disclosure of such communications.[21] A balancing test has been built into the above five exemptions and no others.[22] It is apparent that the Legislature has specifically indicated where it wants a balancing of interests to occur. A balancing test is not mentioned in the privacy exemption.[23] Thus, we deem it inappropriate for this Court to independently use one in determining the exemption's applicability.

There are other factors which militate against using a balancing test. An immediate problem

[20] MCL 15.243(1)(c), (l), (o), and (t); MSA 4.1801(13)(1)(c), (l), (o), and (t).

[21] MCL 15.243(1)(n); MSA 4.1801(13)(1)(n).

[22] No exemptions in the federal FOIA specifically require balancing. Even *Getman v NLRB*, n 14 *supra*, p 213, n 10, recognized this.

[23] In relying on the presence of a balancing test in the other exemptions to preclude the use of one in the privacy exemption, it is irrelevant that if a balancing test were applied to that exemption, the interests to be weighed might arguably differ from those in the five exemptions. Exemption 13(n) requires a different test than the other four. Clearly, the Legislature has indicated when it wants any type of balancing to occur. All that is left for the courts to determine is whether the requested information is exempt under an express provision of § 13.

would be to specify the weights to be used on each side of the scale. If, for example, the balancing in all exemptions should be the public interest in disclosure against the public interest in nondisclosure, there would have been no reason for the Legislature to expressly mandate the balancing tests referred to above. If other weights are to be placed on the scales, the statute gives us no hint as to what they are.

Further, if the privacy exemption required a balancing of interests, it would necessarily follow that the agency would have to balance in the first instance, when the request was initially made. The reluctance of state agencies to release information in part led to the enactment of the FOIA. A balancing test would frustrate the act's goal and create a potential for abuse by allowing agencies to "balance" in favor of nondisclosure.[24]

### 2. AN INQUIRY INTO THE REQUESTER'S IDENTITY OR PURPOSE IS NOT APPROPRIATE

In determining whether to withhold information under the privacy exemption, a state agency should not consider the requester's identity or evaluate the purpose for which the information will be used. The exemption conspicuously lacks a requirement that such factors be considered. Of course, the requester's identity must be given to allow the agency to respond to the request. The act does not require the requester to reveal why it needs or wants the information, however.[25] The purpose itself might be confidential, concerning

---

[24] Note, *Invasion of privacy,* n 19 *supra,* pp 528-529.

[25] The federal FOIA also does not require that purpose or identity be considered. Yale Law Professor Anthony Kronman observed:

such matters as the marketing strategy of a company or the political aims and ambitions of an individual or a political action group.

In the present case, the requesters assert that they seek the addresses of certain state employees to inform them of their employee rights and to facilitate mailings of organizational and informational materials. We need not determine whether this is an activity charged with a strong public interest. The purpose is irrelevant.[26] If the disclosure of the information would be a clearly unwarranted invasion of privacy, the plain language of the statute forbids its disclosure no matter how worthwhile the purpose of seeking the information.

---

There is nothing in the Freedom of Information Act to suggest that the motives of the party seeking disclosure have any bearing on the government's obligation, under the act, to reveal the requested information. Indeed, as many courts have held, the deliberate decision of the draftsmen of the act not to include a "reason to know" requirement in the act's basic disclosure provisions has the opposite implication—that a requester's motives neither expand nor contract his right to obtain the information he wants. [Kronman, *The privacy exemption to the Freedom of Information Act*, 9 J Legal Stud 727, 743 (1980).]

Similarly, University of Chicago Law Professor Davis noted:

If the officer or judge finds that the disclosure will be an unwarranted invasion but is in doubt whether it is "clearly unwarranted," a natural approach to decision would be to weigh the privacy interest against the interest of the party seeking the information, so that disclosure would be made to one with a legitimate need but not to one who is malevolently motivated or an officious intermeddler. But under the Act such a balancing is inappropriate. All parties are equal in satisfying the words "any person." [Davis, *The information act: A preliminary analysis*, 34 U Chi L R 761, 766 (1967).]

[26] This is not to say that in all instances the reasons for seeking disclosure are irrelevant. As we have noted, in certain areas, balancing of competing interests is expressly required, in which case the purpose or intended use may be quite relevant and would have to be disclosed.

### 3. NO CLEARLY UNWARRANTED INVASION
### OF PRIVACY EXISTS

While neither balancing of interests nor consideration of purpose or identity is appropriate, the act requires a determination whether the release of the requested information would be a "clearly unwarranted invasion of an individual's privacy." The Legislature made no attempt to define the right of privacy.[27] We are left to apply the principles of privacy developed under the common law and our constitution. The contours and limits are thus to be determined by the court, as the trier of fact, on a case-by-case basis in the tradition of the common law.[28] Such an approach permits, and indeed requires, scrutiny of the particular facts of each case, to identify those in which ordinarily impersonal information takes on "an intensely personal character"[29] justifying nondisclosure under the privacy exemption.

In this case, determination of the issue is not difficult. This Court has already held, in *Tobin v Civil Service Comm,* 416 Mich 661; 331 NW2d 184 (1982), that there is no common-law or constitutional right to privacy in the type of information sought in the present case. In *Tobin,* the defendants, the Michigan Civil Service Commission and the Department of Civil Service, had received requests from several labor organizations for the names and home addresses of all classified civil service employees. The defendants indicated their

[27] Justice RYAN called the privacy exemption "a purposefully imprecise legislation." 422 Mich 457.

[28] Professor Davis noted that "clearly unwarranted invasion of privacy" is a reasonably clear standard "that can gradually be made more precise through case-to-case development." Davis, n 25 *supra,* p 798.

[29] Justice RYAN's opinion in *Kestenbaum, supra,* p 547.

intention to comply with their requests. The plaintiffs, five classified civil service employees, objected and were granted summary judgment in circuit court, which the Court of Appeals reversed. 98 Mich App 604; 296 NW2d 320 (1980). This Court affirmed.

The Court first determined that the FOIA did not require nondisclosure of those public records which could be withheld under one of the act's exemptions. Nondisclosure is discretionary, not mandatory. Thus we declined to decide whether the requested information did in fact fall within the privacy exemption.[30]

> Since we hold that the allegation that the information falls within the privacy exemption does not prevent the discretionary disclosure contemplated by the defendants, any further interpretation of the FOIA would be obiter dictum. [416 Mich 671.]

The Court then rejected the plaintiffs' assertions that release of the information would violate their common-law or constitutional right to privacy. In evaluating the plaintiffs' common-law right to privacy claim, the Court observed:

> Names and addresses are not ordinarily personal, intimate, or embarrassing pieces of information. The supposed right to keep such information secret is at best riddled with exceptions. [416 Mich 672-673.]

We also found no infringement of the plaintiffs' federal or state constitutional right to privacy. In support of this finding, the Court relied on the

---

[30] Defendants rely on the fact that the *Tobin* Court expressly refused to decide whether the information was exempt under the privacy exemption. 416 Mich 671. Our caution in *Tobin* to decide only what was then before us should not be construed as a holding one way or the other.

following reasoning in *Webb v City of Shreveport,* 371 So 2d 316 (La App, 1979), where a similar constitutional argument was rejected:

> "A person's employment, where he lives, and where he works are exposures which we all must suffer. We have no reasonable expectation of privacy as to our identity or as to where we live or work. Our commuting to and from where we live and work is not done clandestinely and each place provides a facet of our total identity." [416 Mich 677.]

As in *Tobin,* there has been no showing in the present case that the employees whose addresses would be revealed might be subject to harassment or injury upon the information's release.[31] Also, the information sought here is the same which the plaintiffs obtained in *Tobin,* that is, the home addresses of certain state employees. Pursuant to *Tobin,* we find that the present employees have no common-law or constitutional right to privacy in their home addresses. Thus, there is no privacy invasion, much less a clearly unwarranted one, in the release of that information.[32]

### C. THERE ARE NO USE RESTRICTIONS IN THE ACT

The act does not expressly restrict the use of information once it is released. The lack of such a provision is consistent with the absence of a general purpose requirement. The initial as well as future uses of the requested information are irrele-

---

[31] When the Legislature has perceived a need for protecting the release of home addresses of certain governmental employees, it has specifically done so. The release of home addresses of law enforcement officers and their relatives is expressly prohibited under the FOIA. MCL 15.243(1)(t)(iii) and (iv); MSA 4.1801(13)(1)(t)(iii) and (iv).

[32] The fact that "unwarranted" is modified by "clearly" in the privacy exemption is significant. Compare the exemption in MCL 15.243(1)(b)(iii); MSA 4.1801(13)(1)(b)(iii).

vant. Moreover, there are practical difficulties in implementing use restrictions. We decline to impose a burden on the courts to monitor the use of information after it is released. We leave open the possibility that in those cases where a balancing is statutorily required, a factor weighing in favor of disclosure might be the existence of feasible and adequate safeguards against abuse.

### IV. CONCLUSION

The Legislature did not intend that a balancing of interests occur in evaluating the privacy exemption in Michigan's FOIA. It is also unnecessary to consider the purpose for which the requested information will be used, or the requester's identity. Instead, the issue is whether the disclosure itself would constitute a clearly unwarranted invasion of privacy. We conclude that the release of the home addresses of the state employees in question does not amount to such an invasion. We would affirm the decision of the Court of Appeals.

LEVIN and ARCHER, JJ., concurred with CAVANAGH, J.

BRICKLEY, J. (*concurring in part and dissenting in part*). I concur in the result reached in the lead opinion, but disagree with the abandonment of the balancing test as a means of construing the "clearly unwarranted" language of MCL 15.243(1)(a); MSA 4.1801(13)(1)(a). As I indicated in my opinion in *UPGWA v Dep't of State Police,* 422 Mich 432, 465; 373 NW2d 713 (1985), I prefer the version of the balancing test articulated by Justice RYAN in *Kestenbaum v Michigan State Univ,* 414 Mich 510; 327 NW2d 783 (1982). However, because I would find that the addresses requested in this case do not amount to "[i]nformation of a personal

nature" under the privacy exemption statute, thereby making it inapplicable, I see no need to reach the balancing of public and private interests presented in this case.

The words of the privacy exemption necessitate the exercise of some judgment, and the balancing test provides a means of assessing whether an invasive disclosure is "clearly unwarranted." As I indicated in my *UPGWA* opinion:

> A balancing test is an appropriate means of implementing the words of the statutory exemption. Determining whether "public disclosure of the information would constitute a *clearly unwarranted* invasion of an individual's privacy" necessarily involves an evaluation of the privacy interests and a weighing of those interests against the public interest to be served in the disclosure. [*Id.,* pp 465-466. Emphasis in original.]

The fact that the Legislature has specified a different type of balancing test to be employed when applying other exemptions under the act should not deter this Court from construing the undefined terms in § 13(1)(a) by way of a balancing test that focuses on the "clearly unwarranted invasion of . . . privacy" language. The exemption in question seeks to protect the *privacy* interests of persons to whom the information sought to be disclosed relates. The terminology employed by the Legislature in § 13(1)(a) necessitates a balancing not of two public interests, but of the privacy interest in information that has been deemed to be of a personal nature against the public interest in disclosure, with a tilt in favor of disclosure. See *Kestenbaum, supra,* p 543 (opinion of Ryan, J.).

However, it must be remembered that the test outlined by Justice Ryan in *Kestenbaum* has two parts. The first question to be answered is whether

the information is "of a personal nature," thereby giving rise to a cognizable privacy interest. If the information is deemed to be personal, then a balancing of private and public interests is employed to determine whether disclosure would amount to a "clearly unwarranted" invasion of privacy.

In *Kestenbaum, supra,* p 546, Justice RYAN relied on the precise nature of the information request ("standard information") and the circumstances of the persons to whom it related ("students at Michigan State University") in reaching his conclusion that the requested information was not "of a personal nature." He noted that, under different circumstances, the same type of information might take on a personal character. *Id.,* p 547.

In *UPGWA,* I found the requested information, considered in its factual context, to be personal in nature, giving rise to a cognizable privacy interest. The factors upon which I based that conclusion were: the scope of the information sought to be disclosed (more than mere addresses), the circumstances of the persons to whom the information related (security guards), the existence of specific exemptions for police and sheriff's departments, and the specific promise of confidentiality that had been made to the addressees in that case. *Id.,* pp 468-469. Thus, I disagree with Chief Justice RILEY's position that all address lists are information of a personal nature.

In the absence of the factors that were present in *UPGWA,* or analogous circumstances that would enhance the privacy interest in the requested information, I would hold that the addresses of state employees, like those of MSU students, do not amount to "[i]nformation of a personal nature." Therefore, in this case, it is unnecessary to make the "clearly unwarranted" determination through balancing.

For these reasons, I would affirm the decision of the Court of Appeals.

Boyle, J. (*concurring in part and dissenting in part*). I would hold, as Justice Ryan did in *Kestenbaum v Michigan State Univ,* 414 Mich 510, 542; 327 NW2d 783 (1982), that, under the foia, the presumption in favor of disclosure is clear. I would further agree with his opinion, and Justice Cavanagh's opinion in this case to the extent that he would so hold, that when a request is initially made, the requester's identity and the need or purpose for the information need not be provided.

However, where it is determined that the request seeks information of a personal nature and, therefore, potentially falls under the exemption in § 13(1)(a) of the act, I believe a balancing is required in order to determine whether disclosure would constitute a clearly unwarranted invasion of an individual's privacy. In that situation, the intensely personal characteristics of the information sought must be balanced against the purpose for which the information is sought, the purposes for which it may be used, and the efficacy of restrictions upon disclosure where partial nondisclosure appears necessary. See *Kestenbaum, supra,* 551-556. Otherwise, the question whether unrestricted disclosure would amount to injury which constitutes a clearly unwarranted invasion of privacy is unascertainable.

I concur in the conclusion of my colleagues that the information here is not of a personal nature and does not fall within the exemption of § 13(1)(a) of the act. Had the information been considered to be of a personal nature, I would adhere to the reasoning used by Justice Ryan in *Kestenbaum* to determine whether the exemption should be invoked.

RILEY, C.J. (*dissenting*). I disagree with the assertion of the lead opinion that applying a judicial balancing test is inappropriate to determine which records are exempt from disclosure under § 13(1)(a) of Michigan's Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* In *UPGWA v Dep't of State Police,* 422 Mich 432; 373 NW2d 713 (1985), I concluded that a balancing of the public interest in disclosure against the privacy interest at stake is appropriate in determining which public records may be exempted pursuant to § 13(1)(a) of the act, and that the FOIA's core purpose as expressed in the policy section of the act, MCL 15.231(2); MSA 4.1801(1)(2), must be considered in weighing the public-interest side.[1] The greater the tendency that release of the information will have in furthering the act's core purpose, the more the scale will tip in favor of disclosure.[2] I remain convinced that this is the correct approach for the reasons I stated in *UPGWA, supra.*[3]

In balancing the public interest against the privacy interest at stake in the case at bar, I conclude that furnishing the employee's home addresses to the plaintiffs would amount to a clearly unwarranted invasion of privacy. Contrary to the view of the lead opinion, I believe that employees do have a strong privacy interest in their home addresses. The United States Court of Appeals for the Fourth Circuit reached the same conclusion in

---

[1] MCL 15.231(2); MSA 4.1801(1)(2) provides:

It is the public policy of this state that all persons are entitled to full and complete information *regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act.* The people shall be informed *so that they may fully participate in the democratic process.* [Emphasis added.]

[2] *UPGWA, supra,* 460-461.
[3] *Id.*

*American Federation of Government Employees, AFL-CIO, Local 1923 v Dep't of Health & Human Services,* 712 F2d 931, 932 (CA 4, 1983), a case interpreting the federal FOIA[4] counterpart of the § 13(1)(a) exemption of the Michigan FOIA:

> Employees have a strong privacy interest in their home addresses. Disclosure could subject the employees to an unchecked barrage of mailings and perhaps personal solicitations, for no effective restraints could be placed on the range of uses to which the information, once revealed, might be put.

I believe this reasoning is equally applicable to the case at bar. Furthermore, I believe disclosure of the employees' home addresses would do very little, if anything, to further the act's core purpose. Release of such information will primarily inure to the benefit of the unions in a proprietary sense. It will not do anything to inform the requesters of the affairs of government or of the official acts of public officials or employees, nor will it facilitate their participation in the democratic process.

In light of the above, I believe that the privacy interests at stake substantially outweigh the public interest in disclosure and that the department properly exempted the requested records. Therefore, I would reverse.

GRIFFIN, J., took no part in the decision of this case.

---

[4] 5 USC 552(b)(6).