OAKLAND PRESS v PONTIAC STADIUM BUILDING AUTHORITY

Docket No. 96798. Submitted October 16, 1987, at Detroit. Decided May 20, 1988.

The Oakland Press brought an action in the Oakland Circuit Court against the Pontiac Stadium Building Authority to compel disclosure of the names and addresses of the lessees of suites at the Pontiac Silverdome. The court, Gene Schnelz, J., granted summary disposition ordering disclosure. Defendant appealed.

The Court of Appeals *held:*

Names and addresses are not ordinarily personal, intimate or embarrassing pieces of information subject to exemption from disclosure under the Freedom of Information Act. Defendant did not demonstrate that disclosure would constitute a clearly unwarranted invasion of privacy. The court's order was proper and took reasonable means of providing some protection to the lessees from harassment by providing for deletion of their suite numbers.

Affirmed.

PRIVACY — FREEDOM OF INFORMATION ACT — NAMES AND ADDRESSES.

Names and addresses are not ordinarily personal, intimate or embarrassing pieces of information subject to exemption from disclosure under the Freedom of Information Act (MCL 15.243[1][a]; MSA 4.1801[13][1][a]).

*Keywell & Rosenfeld* (by *Dawn L. Phillips* and *Richard E. Segal*), for plaintiff.

*Zamplas, Paskin, Nagi, Baxter, Johnson & Walker, P.C.* (by *Jeannette A. Paskin*), for defendant.

REFERENCES

Am Jur 2d, Records and Recording Laws §§ 46.14.

What constitutes personal matters exempt from disclosure by invasion of privacy exemption under state freedom of information act. 26 ALR4th 666.

Before: Wahls, P.J., and Sawyer and C. W.
Simon, Jr.,* JJ.

Per Curiam. In March, 1986, plaintiff Oakland
Press requested that defendant Pontiac Stadium
Building Authority release copies of all license
agreements by which individuals and corporations
lease suites at the Pontiac Silverdome. Defendant
released the copies with the licensees' names and
addresses deleted. Plaintiff thereafter commenced
this action to compel disclosure of the names and
addresses under the Freedom of Information Act
(foia), MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*
Plaintiff moved for summary disposition under
MCR 2.116(C)(10) and, on November 12, 1986, the
trial court granted the motion and ordered defen-
dant to release complete copies of all agreements,
with the exception that suite numbers could be
deleted where the licensee was an individual. De-
fendant appeals as of right. We affirm.

On appeal, defendant does not claim that any
genuine issue of fact existed pursuant to MCR
2.116(C)(10). The sole issue is whether the names
and addresses on the license agreements were
exempt from disclosure under § 13(1)(a) of the
foia, which states:

> (1) A public body may exempt from disclosure as
> a public record under this act:
> (a) Information of a personal nature where the
> public disclosure of the information would consti-
> tute a clearly unwarranted invasion of an individ-
> ual's privacy. [MCL 15.243(1)(a); MSA
> 4.1801(13)(1)(a).]

The threshold inquiry under § 13(1)(a) is
whether the information sought is "of a personal

---

* Circuit judge, sitting on the Court of Appeals by assignment.

nature." *Detroit Free Press, Inc v Oakland Co Sheriff,* 164 Mich App 656, 668; 418 NW2d 124 (1987). Names and addresses are not ordinarily personal, intimate, or embarrassing pieces of information. *Tobin v Civil Service Comm,* 416 Mich 661, 672; 331 NW2d 184 (1982). "While some people might *prefer* that their names and addresses not be known to certain individuals such as advertisers, bill collectors, or freeloading relatives, that preference is simply not based on the fact that one's address is a 'personal', intimate, or embarrassing piece of information." *Kestenbaum v Michigan State University,* 414 Mich 510, 546-547; 327 NW2d 783 (1982) (opinion of Justice RYAN).

In *Kestenbaum,* a case producing an equally divided Court on whether Michigan State University was required to release student names and addresses in magnetic tape form, Justice RYAN concluded that, in unusual circumstances, such impersonal information may take on an "intensely personal character," but left this question for another day since he was satisfied that the information sought was not of a personal nature. *Id.,* pp 546-547. The present case likewise involves no unusual circumstances. Although defendant, relying on a survey of licensees taken in response to plaintiff's FOIA request, argues that disclosure would cause harm, harassment and embarrassment to licensees, we find nothing unusual in the requested information itself which would cause such embarrassment or harm, or otherwise reveal information of a personal nature. The name and address information merely identified with whom defendant was doing business through license agreements.

Even assuming that the requested name and address information was of a personal nature, we would find no error in the trial court's order of

disclosure since we are not persuaded that the second inquiry under § 13(1)(a), that being whether disclosure would constitute a "clearly unwarranted invasion of an individual's privacy," was shown. Defendant, of course, had the burden of proof to justify its refusal to disclose the information. MCL 15.240(1); MSA 4.1801(10)(1).

In *Michigan State Employees Ass'n v Dep't of Management & Budget,* 428 Mich 104; 404 NW2d 606 (1987), six members of our Supreme Court recently discussed what approach should be taken in deciding whether the disclosure of home address information on governmental employees constituted a clearly unwarranted invasion of privacy. Justice CAVANAGH, in whose opinion Justices LEVIN and ARCHER concurred, decided that constitutional and common-law notions of privacy should be considered, with the sole issue being whether disclosure would constitute a clearly unwarranted invasion of privacy. 428 Mich 123, and see *Detroit Free Press, supra,* p 661. Relying on *Tobin, supra,* Justice CAVANAGH concluded that there was no common-law or constitutional right to privacy in the home address information sought by the plaintiff.

By contrast, Justice BRICKLEY, who concurred in the result, preferred that a balancing of private and public interests be employed to determine whether disclosure would amount to a "clearly unwarranted" invasion of privacy. He concluded, however, that it was unnecessary to apply this approach since the information at issue was not of a personal nature. 428 Mich 128. Justice BOYLE also concurred in the result. She wrote separately to express her view that, when it is determined that the information sought is of a personal nature, then the "intensely personal characteristics" of the information ought to be balanced against

the purpose for which the information is sought, the purpose for which it may be used, and the efficacy of restrictions upon disclosure where partial nondisclosure appears necessary. 428 Mich 129.

Finally, Justice RILEY wrote a dissent wherein she opined that the public interest ought to be balanced against the privacy interest at stake, and that the policy expressed in FOIA in favor of full and complete disclosure regarding the affairs of government and the official acts of public officials and employees, MCL 15.231(2); MSA 4.1801(1)(2), must be considered in weighing the public-interest side. Applying this test to the case at hand, Justice RILEY concluded that the information sought was exempt from disclosure because the employees had a strong privacy interest in their addresses and disclosure would do little, if anything, to further the FOIA's core purpose. 428 Mich 131.

Applying any of these approaches to the case at hand, we find that defendant failed to demonstrate a clearly unwarranted invasion of privacy. First, with regard to Justice CAVANAGH's approach, we find that the only conceivable right of privacy which could be implicated is that involving intrusion upon the licensees' seclusion or solitude, or into the licensees' private affairs. See *Detroit Free Press, supra,* pp 663-664. This "intrusion" theory, however, applies only when an objectionable method is used to obtain secret and private information which the licensees have a right to keep private. *Id.,* p 664. A FOIA request seeking the identity of the individuals and corporations doing business with defendant through license agreements does not give rise to such an intrusion.

Moreover, as noted by the trial court, any individual contracting with a public entity should realize that the transaction may be subject to

public scrutiny. Thus, applying any of the balancing tests advanced in *State Employees Ass'n, supra,* we find that defendant failed to justify its nondisclosure of the name and address information sought by plaintiff. The mere possibility that disclosure will cause harm, harassment, and embarrassment to licensees, even when supported by a survey of licensees, does not outweigh the public interest in receiving information on whom defendant is transacting business with. Further, since plaintiff sought the name and address information for the purpose of its ongoing reporting on the financial condition of the Pontiac Silverdome and other related matters, such as the effect of proposed tax reforms on the licensees' plans to continue or renew their license agreements, the "core purpose" factor advocated by Justice RILEY also weighs in favor of disclosure. 428 Mich App 130-131.

Under the facts of this case, we conclude that the name and address information sought by plaintiff was not of a personal nature and, in any event, did not constitute a clearly unwarranted invasion of the licensees' privacy. Moreover, the trial court's order that suite numbers could be deleted for licensees who were individuals was a reasonable means of providing some protection to those individuals against any risk of harassment while at the suite, yet allowing for a complete disclosure of whom defendant was doing business with.

Affirmed.