DETROIT FREE PRESS, INC v OAKLAND COUNTY SHERIFF

Docket No. 92580. Submitted May 14, 1987, at Detroit. Decided
December 7, 1987.

In early March, 1986, a Detroit Free Press newspaper reporter
requested that the office of the Oakland County Sheriff release
to her, or permit her to copy, booking photographs of two
individuals awaiting trial in Oakland County on bank robbery
charges. An assistant Oakland County corporation counsel,
acting for the Oakland County Sheriff, denied the request,
citing two sections of the Freedom of Information Act and
expressing concern for protecting taxpayers from litigation
arising out of unwarranted and inappropriate disclosure of
private information. The Free Press filed suit against the
Oakland County Sheriff in Oakland Circuit Court seeking ac-
cess to the information sought. The court, James S. Thorburn,
J., ruled in favor of plaintiff, ordering defendant to make
available to plaintiff "for inspecting and copying any and all
public records in the possession or control of the sheriff known
as booking photos, including without limitation, booking photos
of" the two individuals involved. Defendant appealed.

The Court of Appeals held:

Nondisclosure of the booking photographs sought by the Free
Press cannot be justified under the FOIA. Neither the arrested
individuals' common law rights of privacy nor their constitu-
tional rights of privacy will be violated by the granting of
plaintiff's request. The public records sought do not contain
information of a personal nature the public disclosure of which
would constitute a clearly unwarranted invasion of an individu-
al's privacy.

Affirmed.

REFERENCES

Am Jur 2d, Privacy § 17.

Am Jur 2d, Records and Recording Laws § 46.15.

Supreme Court's views as to the federal legal aspects of the right of
privacy. 43 L Ed 2d 871.

What are "records" of agency which must be made available under
state freedom of information act. 27 ALR4th 680.

What constitutes personal matters exempt from disclosure by inva-
sion of privacy exemption under state freedom of information act.
26 ALR4th 666.

PRIVACY — FREEDOM OF INFORMATION ACT — BOOKING PHOTOGRAPHS.
Booking photographs of individuals are not entitled to exemption
from disclosure under the Freedom of Information Act where
the individuals involved have been arrested, charged in open
court, and are awaiting trial for bank robbery and have been
the subject of two newspaper articles and a photograph; under
these circumstances the booking photographs reveal no infor-
mation of a personal nature which would constitute a clearly
unwarranted invasion of the individuals' privacy (MCL
15.243[1][a]; MSA 4.1801[13][1][a]).

*Honigman, Miller, Schwartz & Cohn* (by *Her-
schel P. Fink*), for plaintiff.

*Craig, Farber, Downs & Dise, P.C.* (by *Roger E.
Craig*), for defendant.

Before: D. F. WALSH, P.J., and SHEPHERD and
M. M. DOCTOROFF, JJ.

D. F. WALSH, P.J. The issue presented in this
case is whether booking photographs (mug shots)
of persons arrested, charged with felonies, and
awaiting trial constitute information of a personal
nature the disclosure of which would constitute a
clearly unwarranted invasion of the arrestees' pri-
vacy under § 13(1)(a) of Michigan's Freedom of
Information Act. MCL 15.231 *et seq.*; MSA
4.1801(1) *et seq.* We affirm the decision of the
circuit court and hold that nondisclosure of the
booking photographs at issue in this case is not
justified under § 13(1)(a).

### FACTS

In early March, 1986, a Detroit Free Press news-
paper reporter requested that the office of the
Oakland County Sheriff release to her, or permit
her to copy, booking photographs of Benjamin Len
Bullock and Ronnie Mitchell, both of whom were

awaiting trial in Oakland County on bank robbery charges. According to a March 6, 1986, Free Press article, Bullock had been charged with robbing two banks located in the City of Birmingham. He was being held in the Oakland County Jail following arraignment in district court on March 3. A March 27, 1986, Free Press article disclosed that Bullock had also been charged with a Detroit bank robbery. That article further disclosed that Mitchell had been arrested with Bullock after the second Birmingham robbery. He had been charged with that robbery and had been released on bond from the Oakland County Jail on March 14. The March 27, 1986, article was accompanied by a photograph of Bullock which had been obtained from the Detroit Police Department. According to the Free Press, the two articles were based on information contained in public records released by public offices, including the FBI, and gathered from coverage of court proceedings.

By letter dated March 26, 1986, an assistant Oakland County corporation counsel, acting for the Oakland County Sheriff, denied the Free Press request for the booking photographs, citing § 13(1)(a) and § 13(1)(b) of the Freedom of Information Act and MCL 28.243; MSA 4.463.[1] Counsel expressed concern for protecting taxpayers from litigation arising out of "unwarranted and inappropriate disclosure of private information."

The Free Press, through its legal counsel, responded in an April 7, 1986, letter, emphasizing the public nature of criminal court proceedings. Counsel opined that the statutory requirement that a criminal file be returned to a person upon

[1] Defendant has abandoned any claim of exemption under § 13(1)(b) of the FOIA. MCL 15.243(1)(b); MSA 4.1801(13)(1)(b). MCL 28.243; MSA 4.463 concerns, inter alia, the return of fingerprints, arrest cards and descriptions to arrestees who are released without charge or who are found not guilty.

acquittal "does not require the clock to be turned back, nor does it bar contemporaneous release of news and full coverage of criminal prosecutions." It was noted that the right to sketch defendants in court has been recognized and that "a majority of states now permit all or parts of court proceedings to be publicly televised."[2] Also noted was the "routine past practice of police departments throughout the state and Oakland County to release" booking photographs.

Defendant sheriff persisted in his refusal to release the booking photographs. On May 8, 1986, the Free Press filed its verified complaint against the sheriff. An order to show cause was issued. At the May 19, 1986, hearing, defendant's counsel agreed that the booking photographs were public records but argued that their disclosure would be an unreasonable and unwarranted violation of individual suspects' rights of privacy. The court disagreed, ordering defendant to make available to plaintiff "for inspection and copying any and all public records in the possession or control of the Sheriff known as booking photos, including without limitation, booking photos of Benjamin Len Bullock and Ronnie Mitchell." Defendant appeals.

#### THE FREEDOM OF INFORMATION ACT

Section 1 of the FOIA contains the following declaration of public policy:

> It is the public policy of this state that all
> persons are entitled to full and complete informa-

[2] See 428 Mich cxl (Michigan Supreme Court Administrative Order 87-4, released August 26, 1987), concerning Michigan's one-year experimental program permitting cameras in trial and appellate courts on a limited basis. Limitations include the necessity of procuring the consent of the presiding judge, the parties and, in a criminal case, the victim(s). Film or electronic media coverage of a witness is not permitted if he or she objects.

tion regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [MCL 15.231(2); MSA 4.1801(1)(2).]

Except as otherwise provided in § 13 of the FOIA, a person has a right to inspect, copy or receive copies of a public record of a public body. MCL 15.233(1); MSA 4.1801(3)(1). In § 13, MCL 15.243; MSA 4.1801(13), the Legislature authorizes, but does not require, nondisclosure of certain public records. See *Tobin v Civil Service Comm,* 416 Mich 661, 666-671; 331 NW2d 184 (1982). A public body which refuses disclosure bears the burden of justifying the refusal. MCL 15.240(1); MSA 4.1801(10)(1). Statutory exemptions from disclosure are narrowly construed. *The Evening News Ass'n v City of Troy,* 417 Mich 481, 503; 339 NW2d 421 (1983), reh den 418 Mich 1202 (1984).

### THE PRIVACY EXEMPTION:

#### *STATE EMPLOYEES ASS'N v DEP'T OF MANAGEMENT & BUDGET*

In this case, defendant seeks to justify his denial of the Free Press request under § 13(1)(a) of the FOIA, the privacy exemption:

(1) A public body may exempt from disclosure as a public record under this act:

(a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy. [MCL 15.243(1)(a); MSA 4.1801(13)(1)(a).]

Six members of the Supreme Court recently

discussed the privacy exemption. Over Chief Justice RILEY's dissent, the Court held that nondisclosure of the home addresses of certain governmental employees is not justified under § 13(1)(a) of the FOIA. *State Employees Ass'n v Dep't of Management & Budget,* 428 Mich 104; 404 NW2d 606 (1987).

In *State Employees Ass'n,* Justice CAVANAGH, in whose opinion Justices LEVIN and ARCHER concurred, found that the Legislature did not intend that a balancing of interests be made in evaluating applicability of the privacy exemption contained in the Michigan FOIA. 428 Mich 116-121. These three Justices also found that, in reviewing a request for information under § 13(1)(a), the public body should not consider the requester's identity or the purpose for which the information will be used. 428 Mich 121-122. The sole issue is whether disclosure would constitute a clearly unwarranted invasion of privacy. That inquiry is guided by common law and constitutional principles:

> While neither balancing of interests nor consideration of purpose or identity is appropriate, the act requires a determination whether the release of the requested information would be a "clearly unwarranted invasion of an individual's privacy." The Legislature made no attempt to define the right of privacy. We are left to apply the principles of privacy developed under the common law and our constitution. The contours and limits are thus to be determined by the court, as the trier of fact, on a case-by-case basis in the tradition of the common law. Such an approach permits, and indeed requires, scrutiny of the particular facts of each case, to identify those in which ordinarily impersonal information takes on "an intensely personal character" justifying nondisclosure under the privacy exemption. [428 Mich 123.]

These three Justices found no common law or constitutional right to privacy in the requested home addresses. Thus they found no privacy invasion, much less a clearly unwarranted one, in release of that information. 428 Mich 123-125.

Justice BRICKLEY concurred in the result because he found that the addresses of state employees did not amount to "information of a personal nature" within the meaning of the privacy exemption. 428 Mich 126-128. He wrote separately to indicate his preference for the balancing test which had been articulated by Justice RYAN in *Kestenbaum v Michigan State University,* 414 Mich 510; 327 NW2d 783 (1982), reh den 417 Mich 1103 (1983). Under that test, the privacy interest in information of a personal nature is balanced against the public interest in disclosure. 428 Mich 127.

Justice BOYLE also concurred in the result, finding that the information sought was not of a personal nature and thus did not fall within § 13(1)(a). She also agreed that, when a request is initially made, the requester's identity and the need or purpose for the information need not be provided. She wrote separately to express her view that, once it is determined that requested information is of a personal nature, applicability of § 13(1)(a) is determined by balancing "the intensely personal characteristics of the information sought . . . against the purpose for which the information is sought, the purposes for which it may be used, and the efficacy of restrictions upon disclosure where partial nondisclosure appears necessary." 428 Mich 129, citing *Kestenbaum, supra,* 414 Mich 551-556 (opinion of Justice RYAN).

Dissenting, Chief Justice RILEY adhered to her view, expressed in *UPGWA v Dep't of State Police,* 422 Mich 432; 373 NW2d 713 (1985), that a balancing of the public interest and privacy interest is

appropriate in determining which public records may be exempted from disclosure under § 13(1)(a) and that the FOIA's core purpose as expressed in MCL 15.231(2); MSA 4.1801(1)(2) must be considered in weighing the public interest side. She found that the state employees had a strong privacy interest in their home addresses and that disclosure would do little, if anything, to further the FOIA's core purpose. 428 Mich 130-131.

## BOOKING PHOTOGRAPHS

Under any of the approaches of the majority Justices in *State Employees Ass'n,* we find that defendant's nondisclosure of the booking photographs requested by plaintiff is not justified under § 13(1)(a). We first apply the threshold approach detailed in Justice CAVANAGH's opinion. Under that approach, common law and constitutional principles of privacy are applied to determine if an individual has a right to privacy in the requested information.

In Michigan, the right of privacy has long been recognized. See discussion in *Beaumont v Brown,* 401 Mich 80, 93-95; 257 NW2d 522 (1977). In the "reverse" FOIA case of *Tobin v Civil Service Comm, supra,* 416 Mich 672, upon which Justice CAVANAGH relied in *State Employees Ass'n,* the Supreme Court discussed the common law right of privacy:

> The common-law right of privacy is said to protect against four types of invasion of privacy.
> " '1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
> " '2. Public disclosure of embarrassing private facts about the plaintiff.
> " '3. Publicity which places the plaintiff in a false light in the public eye.

> " '4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.' Prosser, *Privacy,* 48 Cal L Rev 383, 389 (1960)." *Beaumont v Brown,* 401 Mich 80, 95, n 10; 257 NW2d 522 (1977); see also 3 Restatement Torts, 2d, § 652A, p 376.

None of these branches of the right of privacy is implicated by making available the booking photographs sought by plaintiff in this case.

The elements of a cause of action under an "intrusion" theory are clearly not present under the instant circumstances. Under that theory, a person is subject to liability only when he or she has used an objectionable method to obtain secret and private information which the plaintiff has a right to keep private. *Tobin v Civil Service Comm, supra,* 416 Mich 672-674. See also 3 Restatement Torts, 2d, § 652B and comments, p 378-380.

Under the second theory, liability is precluded unless the matter publicized is not of legitimate concern to the public; there is no liability for giving publicity to matters already of public record or otherwise open to the public eye. *Ledsinger v Burmeister,* 114 Mich App 12, 23-24; 318 NW2d 558 (1982); *Fry v Ionia Sentinel-Standard,* 101 Mich App 725, 728-729; 300 NW2d 687 (1980). See 3 Restatement Torts, 2d, § 652D, comments f and g, pp 389-391:

> *f. Involuntary public figures.* There are other individuals who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest. They have, in other words, become "news." *Those who commit crime or are accused of it may not only not seek publicity but may make every possible effort to avoid it, but they are nevertheless persons of public interest, concerning whom the public is entitled to be informed.* The

same is true as to those who are the victims of crime or are so unfortunate as to be present when it is committed, as well as those who are the victims of catastrophes or accidents or are involved in judicial proceedings or other events that attract public attention. These persons are regarded as properly subject to the public interest, and publishers are permitted to satisfy the curiosity of the public as to its heroes, leaders, villains and victims, and those who are closely associated with them. As in the case of the voluntary public figure, the authorized publicity is not limited to the event that itself arouses the public interest, and to some reasonable extent includes publicity given to facts about the individual that would otherwise be purely private. (See Comment g).

Illustrations:

13. A is tried for murder and acquitted. During and immediately after the trial B Newspaper publishes daily reports of it, together with pictures and descriptions of A and accounts of his past history and daily life prior to the trial. This is not an invasion of A's privacy.

\* \* \*

g. *News.* Included within the scope of legitimate public concern are matters of the kind customarily regarded as "news." To a considerable extent, in accordance with the mores of the community, the publishers and broadcasters have themselves defined the term, as a glance at any morning paper will confirm. *Authorized publicity includes publications concerning* homicide and other crimes, *arrests,* police raids, suicides, marriages and divorces, accidents, fires, catastrophes of nature, a death from the use of narcotics, a rare disease, the birth of a child to a twelve-year-old girl, the reappearance of one supposed to have been murdered years ago, a report to the police concerning the escape of a wild animal and many other similar matters of genuine, even if more or less deplorable, popular appeal. [Emphasis added.]

We find that the booking photograph of a person

arrested, charged with a felony, and awaiting trial reveals no facts about the arrestee which are not matters of legitimate public concern. See *Frith v Associated Press,* 176 F Supp 671 (ED SC, 1959).[3]

Under a "false light" theory of invasion of privacy, the false light in which the plaintiff was placed before the public must be highly offensive to a reasonable person, and the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Early Detection Center, PC v New York Life Ins Co,* 157 Mich App 618, 630; 403 NW2d 830 (1986); 3 Restatement Torts, 2d, § 652E, p 394. It is essential for recovery under this theory that the matter published concerning the plaintiff be false. *Id.,* comment a, pages 394-395. While the handling of booking photographs may under some circumstances constitute an invasion of privacy under this theory, the facts of this case do not present such circumstances. Compare 3 Restatement Torts, 2d, § 652E, illustration 7, page 397:

> 7. A and other police officers of a city maintain in the police department a "Rogues Gallery" of photographs, fingerprints and records of those convicted of crime. B is accused of robbery, arrested, fingerprinted and jailed. He is released when the accusation proves to be a matter of mistaken identity and another man is convicted of the crime. Although B never has been convicted of any crime, A insists, over B's objection, in including B's photograph and fingerprints in the Rogues Gallery. A has invaded the privacy of B.

[3] Compare *Harbolt v Dep't of State,* 616 F2d 772 (CA 5, 1980), cert den 449 US 856; 101 S Ct 154; 66 L Ed 2d 71 (1980), where the fifth Circuit Court of Appeals found that, under the privacy exemption in the federal FOIA, 5 USC 552, nondisclosure of the names and addresses of United States citizens imprisoned in foreign countries for narcotics offenses was justified.

Finally, the fourth type of invasion of privacy—the appropriation of a person's name or likeness—is clearly not at issue in this case.

Nor are we persuaded that the arrestees' constitutional rights of privacy will be violated by the granting of plaintiff's request in this case. In *Paul v Davis*, 424 US 693; 96 S Ct 1155; 47 L Ed 2d 405 (1976), reh den 425 US 985; 96 S Ct 2194; 48 L Ed 2d 811 (1976), the Supreme Court rejected the invasion of privacy claim of the respondent, whose "mug shot" was included in a Louisville Police Department flyer depicting "active shoplifters." The shoplifting charge against the respondent was dismissed following circulation of the flyer to approximately eight hundred Louisville merchants. Speaking for five members of the Court, Justice Rehnquist discussed the constitutional right of privacy:

> While there is no "right of privacy" found in any specific guarantee of the Constitution, the Court has recognized that "zones of privacy" may be created by more specific constitutional guarantees and thereby impose limits upon government power. See *Roe v Wade*, 410 US 113, 152-153 [93 S Ct 705, 726; 35 L Ed 2d 147, 176-178] (1973). Respondent's case, however, comes within none of these areas. He does not seek to suppress evidence seized in the course of an unreasonable search. See *Katz v United States*, 389 US 347, 351 [88 S Ct 507, 510-511; 19 L Ed 2d 576, 581] (1967); *Terry v Ohio*, 392 US 1, 8-9 [88 S Ct 1868, 1872-1873; 20 L Ed 2d 889, 898] (1968). And our other "right of privacy" cases, while defying categorical description, deal generally with substantive aspects of the Fourteenth Amendment. In *Roe* the Court pointed out that the personal rights found in this guarantee of personal privacy must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in *Palko v*

*Connecticut,* 302 US 319, 325 [58 S Ct 149, 152; 82 L Ed 288, 292] (1937). The activities detailed as being within this definition were ones very different from that for which respondent claims constitutional protection—matters relating to marriage, procreation, contraception, family relationships, and child. rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.

Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be "private," but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner. [424 US 712-713; 96 S Ct 1166; 47 L Ed 2d 420.]

Similarly, defendant presents no authority which suggests that disclosure in this case would violate rights guaranteed to the arrestees under the Michigan Constitution.

We conclude that the disclosure sought by plaintiff in this case would violate neither common law nor constitutional principles of privacy and that, using the approach outlined in Justice CAV-ANAGH's opinion in *State Employees Ass'n,* nondisclosure is not justified under § 13(1)(a).

We further find that the approach preferred by concurring Justices BRICKLEY and BOYLE does not compel a different result. The initial inquiry in any approach to issues arising under § 13(1)(a) is whether the information sought is "of a personal nature." We find that the information sought in this case is not of such nature. According to plaintiff, Bullock and Mitchell had been arrested and

charged with felonies and were awaiting trial at the time of plaintiff's request for release of the booking photographs. Any court proceedings had been open to the public. Based on the facts of this case, we are persuaded that the booking photographs of these two persons revealed no "information of a personal nature" within the meaning of § 13(1)(a). See *Kestenbaum v Michigan State University, supra,* 414 Mich 543-551 (opinion of Justice RYAN).

### CONCLUSION

We find that the public records sought in this case do not contain information of a personal nature the public disclosure of which would constitute a clearly unwarranted invasion of an individual's privacy. We thus affirm the decision of the circuit court. We emphasize that our decision is limited to the particular facts presented.

Affirmed. No costs, a public question being involved.