**THE TIMES PICAYUNE PUBLISHING CORP.**

v.

**THE UNITED STATES DEPARTMENT OF JUSTICE and the United States Marshals Service.**

No. CIV. A. 98–3455.

United States District Court, E.D. Louisiana.

March 5, 1999.

James Richard Swanson, Correro, Fishman, Haygood, Phelps, Walmsley & Casteix, LLP, New Orleans, LA, for plaintiff.

Kathryn Weekley Becnel, U.S. Atty's. Office, New Orleans, LA, Anne L. Weismann, U.S. Dept. of Justice, Civ. Div., Washington, DC, Karyn A. Temple, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants.

### *ORDER AND REASONS*

BERRIGAN, District Judge.

This action stems from efforts by the Times Picayune Publishing Company ("Times–Picayune") to obtain the U.S. Marshals Service booking photograph ("mug shot") of Edward J. DeBartolo, Jr. Mr. DeBartolo is a well known businessman in connection with his ownership of the San Francisco Forty–Niners as well as other business dealings, some of them here in Louisiana. Most recently, he pleaded guilty to federal charges arising out of a criminal investigation of former Louisiana

Governor, Edwin W. Edwards. On November 20, 1998, the Times Picayune filed this lawsuit under the Freedom of Information Act, 5 U.S.C. § 552, to compel the United States Marshals Service to release Mr. DeBartolo's mug shot. Presently before the Court are the parties' cross motions for summary judgment. Having considered the record, the memoranda of counsel, and the law, the Court finds in favor of the defendant.

## I. *BACKGROUND*

The facts of this case are not contested. On October 6, 1998, Edward J. DeBartolo, Jr. pleaded guilty and was sentenced, in the United States District Court for the Middle District of Louisiana, on the charge of misprision of a felony in violation of 18 U.S.C. § 4. Within hours of the plea, U.S. Marshals Service personnel processed Mr. DeBartolo. This included taking his fingerprints and his mug shot. On October 9, 1998, the Times Picayune submitted a Freedom of Information Act ("FOIA") request to the Marshals Service seeking copies of the mug shot. The Marshals Service denied the request by letter dated October 22, 1998. It claimed that the mug shot was exempt from disclosure under 5 U.S.C. § 552(b)(7)(C). On October 21, 1998, the Times Picayune appealed the denial of its request to the Office of Information and Privacy (OIP) of the Department of Justice.[1] OIP acknowledged receipt of the appeal by letter dated November 10, 1998. On November 20, 1998, after the time had expired for deeming its administrative remedies exhausted, 5 U.S.C. § 552(a)(6)(C), the Times Picayune filed this action in federal district court.

On January 15, 1999, the Times Picayune filed a Motion for Partial Summary Judgment to compel immediate disclosure of the mug shot. This was followed, on February 3, 1999, by defendant's own Motion for Summary Judgment. Because there are no genuine issues of material fact in dispute, resolution of this matter on these motions is appropriate.

## II. *DISCUSSION*

A party is entitled to summary judgment if it establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The parties agree that there are no issues as to the material facts of this case. Instead, the cross motions for summary judgment call upon the Court to resolve a single, legal issue: whether disclosure of Mr. DeBartolo's mug shot "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). If the answer is yes, then Exemption (7)(C) precludes disclosure. If the answer is no, disclosure is required.

The FOIA provides for the general disclosure by government agencies of their records upon request 5 U.S.C. § 552(a). The statute was designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Avondale Industries, Inc. v. National Labor Relations Board,* 90 F.3d 955, 958 (5th Cir.1996), *quoting United States Department of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991). It embodies "a general philosophy of full agency disclosure." *Halloran v. Veterans Administration,* 874 F.2d 315, 318 (5th Cir.1989), *quoting Department of the Air Force v. Rose,* 425 U.S. 352, 360, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976). Recognizing that a mandatory policy of full disclosure of agency records under the FOIA would not be warranted in every circumstance, however, Congress exempted certain categories of documents from disclosure. 5 U.S.C. § 552(b)(1)-(9); *Halloran,* 874 F.2d at 318–

---

1. There is no dispute as to the sequence of events in this case or that the lawsuit was timely filed. Therefore, it is not necessary to ascertain why (or how) The Times Picayune appealed the denial of its request on October 21, 1998, one day before the Marshals Service denied the request.

19. An agency that withholds information pursuant to an exemption carries the burden of proving that the exemption applies, and the district court reviews this determination *de novo.* 5 U.S.C. § 552(a)(4)(B); *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 1472, 103 L.Ed.2d 774 (1989) (*"Reporters Committee"*).

The exemption relevant to this matter extends to:

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .
>
> (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

5 U.S.C. § 552(b)(7)(C) ("FOIA Exemption 7(C)"). For the exemption to apply, the information requested must have been compiled "for law enforcement purposes." If that threshold is met, then the specific privacy interests implicated by disclosure of the information must be identified and evaluated. Assuming a privacy interest is found to be implicated, the next step is to identify and evaluate the particular public interests that may be served by disclosure. Finally the specific privacy interests and the particular public interests are weighed to determine if the "invasion" of the privacy interests is "unwarranted." *Halloran,* 874 F.2d at 319. As will be discussed below, the Marshals Service has met its burden of establishing that the FOIA Exemption 7(C) applies.

**A. Was Mr. DeBartolo's Mug Shot Taken "for Law Enforcement Purposes"?**

■ In a series of footnotes, the Times Picayune suggests that the defendant may not be able to satisfy the threshold requirement for exemption from disclosure, namely that the mug shot is a record "compiled for law enforcement purposes." Pl's Mem., Jan. 15, 1999, at 8 n. 8; Pl's Mem., Feb. 9, 1999, at 2 n. 1. The plaintiff argues that the Marshals Service took the mug shot *after* Mr. DeBartolo had already pleaded guilty to all charges and was sentenced. Therefore, "it has no relationship to the enforcement of laws," having been taken instead "for administrative purposes." Pl's Mem., Jan. 15, 1999, at 2 n. 1. The defendant aptly responds, "administration of what[?]." Def's Mem., Feb. 12, 1999, at 1. The Marshals Service, an undisputed law enforcement agency, took Mr. DeBartolo's mug shot for the purpose of fulfilling its legal mandate to facilitate the enforcement of federal laws through processing of individuals charged with federal crimes. *See* 28 C.F.R. § 0.111(j) (the agency's legal duties include " . . . processing . . . of prisoners held in the custody of a marshal . . ."). Clearly this qualifies as "law enforcement purposes." *See Detroit Free Press Inc. v. Department of Justice,* 73 F.3d 93, 96 (6th Cir.1996) (finding that mug shots of federal indictees were compiled for law enforcement purposes); *Jimenez v. FBI,* 938 F.Supp. 21, 28 (D.D.C. 1996) (finding valid law enforcement purpose under FOIA where Marshals Service compiled documents in connection with receipt and processing of individual within Marshals Service custody). Defendant has satisfied the first element of the FOIA Exemption 7(C).

**B. Could Release of Mr. DeBartolo's Mug Shot be "Reasonably Expected to Constitute an Invasion of Personal Privacy"?**

The Times Picayune contends that Mr. DeBartolo has no protectable privacy interest in his mug shot. It argues that Mr. DeBartolo is a well-known person and that his photograph has been publicly shown through the media on numerous occasions, ergo disclosure of another photograph— the mug shot—could not be a privacy invasion. Additionally, the Times–Picayune argues that Exemption 7(C) does not apply to mug shots at all.

 As part of its authority, the plaintiff cites several cases holding that there is no constitutional or common law right of privacy to a mug shot, as well as cases interpreting state Freedom of Information Act statutes. *See, e.g., Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976); *Sorrentino v. City of Philadelphia,* 1997 WL 597990, *7 (E.D.Pa.1997); *Detroit Free Press v. Oakland County Sheriff,* 164 Mich.App. 656, 418 N.W.2d 124, 127 (Mich.Ct.App.1987); *Pemberton v. Bethlehem Steel Corp.,* 66 Md.App. 133, 502 A.2d 1101, 1119 (Md. App.1986); *Frith v. Associated Press,* 176 F.Supp. 671, 673–76 (E.D.S.C.1959). These cases readily can be distinguished. The right of privacy formulated under the Constitution and the common law are different from the privacy interests protected under the FOIA. *Reporters Committee,* 489 U.S. at 763 n. 13, 109 S.Ct. at 1476 n. 13. Obviously, a state court's interpretation of a state's FOIA also is irrelevant to the meaning of the federal statute.

 In order to determine whether Mr. DeBartolo has a privacy interest in a mug shot for purposes of the FOIA Exemption 7(C), the Court must turn to the definition of "privacy interests" as encompassed by the Act and as interpreted by the binding federal case law.

The Times Picayune relies predominantly on the Sixth Circuit decision of *Detroit Free Press, Inc. v. Department of Justice,* 73 F.3d 93 (6th Cir.1996). which did in fact conclude that the release of mug shots in that case did not constitute an invasion of personal privacy under Exemption 7(C). For the following reasons, this Court disagrees with that decision as being contrary to United States Supreme Court jurisprudence and also as conflicting with Fifth Circuit case law that is binding upon this Court.

The Supreme Court broadly defined the privacy interests protected by Exemption 7(C) in *Reporters Committee.* That case involved application of the FOIA exemption to "rap sheets" containing individual information of members of a family alleged to be involved in organized crime. The plaintiff argued that the interest in avoiding disclosure of the rap sheets "approache[d] zero" because the same information was already available to the public through individual searches of various court proceedings and records. *Reporters Committee,* 489 U.S. at 762–63, 109 S.Ct. at 1476. The Court soundly rejected what it called the plaintiff's "cramped notion of personal privacy." *Id.* The Court found that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person," and then turned to the definition of "privacy" set forth in Webster's dictionary: "information may be classified as 'private' if it is 'intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public.'" *Id.,* 489 U.S. at 763–64, 109 S.Ct. at 1476, *quoting* Webster's Third New International Dictionary at 1804 (1976).

The Fifth Circuit reiterated this broad definition of "privacy" in *Halloran. Halloran* involved an attorney's efforts to obtain under the FOIA transcripts of conversations secretly taped during a governmental investigation of fraud. The district court found that the FOIA exemptions under which the government sought to withhold information were not applicable, and ordered disclosure of the transcripts. The Fifth Circuit reversed. Significantly, it rejected as over broad the district court's declaration that there were no privacy interests implicated by the transcripts because the participants discussed only "business activities." *Halloran,* 874 F.2d at 321. The Court explained,

> The extent of one's privacy cannot be determined merely by making an isolated assessment of the subject nature of the information; thus for example, it is incorrect to cabin the concept of "privacy" by restricting a person's right to invoke it only to the personal or intimate details of his or her life.

*Id.* Instead, a court must also consider "the manner in which the information relating to the individuals was obtained and whether they have a reasonable interest in preventing its public disclosure." *Id.*

With respect to Exemption 7(C), in particular, both the United States Supreme Court and the Fifth Circuit found significant that the original exemption, which referred to disclosures that "would constitute" an invasion of privacy, was statutorily broadened [2] to cover disclosures that "could reasonably be expected to constitute" such an invasion. *Reporters Committee,* 489 U.S. at 756, 109 S.Ct. at 1473; *Halloran,* 874 F.2d at 319. In *Halloran,* the Fifth Circuit explained the significance of this language:

> ... we note that we are not required to determine with absolute certainty the effects of releasing the information in controversy. Indeed, as already noted, exemption 7(C) requires only that we find that the disclosure of the records or information "could reasonably be expected to constitute" an unwarranted invasion of privacy before nondisclosure is authorized.
>
> Thus, courts have accepted, as valid, affidavits from government officials that identify the privacy interests at stake only in general terms, as "[i]t is difficult if not impossible, to anticipate all respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort." We thus do not require that the government detail the precise harm which disclosure would inflict upon the privacy interests of each individual; rather, it must only show that release of the information "could reasonably" result in an unwarranted invasion of privacy.

*Id.* 874 F.2d at 320 (internal quotation marks and citations omitted).

Applying these principles to the case at hand leads to the conclusion that Mr. De-Bartolo does have a protectable privacy interest under the FOIA in his mug shot. Contrary to the assertion of the Times Picayune, Mr. DeBartolo's mug shot is more than just another photograph of a person. Mug shots in general are notorious for their visual association of the person with criminal activity. Whether because of the unpleasant circumstances of the event or because of the equipment used, mug shots generally disclose unflattering facial expressions. They include front and profile shots, a backdrop with lines showing height, and, arguably most humiliating of all, a sign under the accused's face with a unique Marshals Service criminal identification number.

As in the cliche, a picture is worth a thousand words. For that reason, a mug shot's stigmatizing effect can last well beyond the actual criminal proceedings. Furthermore, just because somebody has conceded guilt does not negate that person's interest in nondisclosure of the mug shot. *Halloran,* 874 F.2d at 322 ("that otherwise-private information may have been at one time or in some way in the 'public' domain does not mean that a person irretrievably loses his or her privacy interests in it").[3] A mug shot preserves, in its unique and visually powerful way, the subject individual's brush with the law for posterity. It would be reasonable for a criminal defendant, even one who has already been convicted and sentenced, to object to the public disclosure of his or her mug shot.

Moreover, mug shots contain information that is intended for the use of a particular group or class of persons. They are taken for law enforcement purposes, and they are not routinely made available to the public. This is precisely the Web-

---

**2.** Pub.L. 99–570, § 1802, 100 Stat. 3207 (Oct. 27, 1986).

**3.** It is noteworthy that in *Reporters Committee* the Supreme Court found that even publicly available information, albeit inconvenient to uncover, implicated privacy interests. *Reporters Committee,* 489 U.S. at 762–64, 109 S.Ct. at 1476–77. Here, the mug shot sought is not in the public domain at all.

ster's definition of privacy adopted by the United States Supreme Court in *Reporters Committee:* "not freely available to the public." *Reporters Committee,* 489 U.S. at 764, 109 S.Ct. at 1477. Additionally, as in *Reporters Committee,* the fact that The Times Picayune is litigating this case at all indicates that Mr. DeBartolo's mug shot is more than just another photograph that portrays "freely available" information.

As noted already, the Times Picayune relies heavily on the Sixth Circuit decision in *Detroit Free Press,* in which that court affirmed the district court's order to release mug shots of eight named individuals who had been indicted and were awaiting trial. *Detroit Free Press,* 73 F.3d at 95. The court concluded that the mug shots did not divulge any information not already known by virtue of the public indictments, and therefore no privacy interest was implicated by their release. It is noteworthy that the *Detroit Free Press* decision was not unanimous. The dissent argued that the unique characteristics of a mug shot did trigger a cognizable privacy interest in preventing its public disclosure. *Id.* at 99 (Norris, J., dissenting). As stated above, this Court respectfully disagrees with the result reached by the Sixth Circuit in *Detroit Free Press.*

In any case, *Detroit Free Press* is distinguishable from this case because the subjects of the mug shots in *Detroit Free Press* were under indictment and awaiting trial when the plaintiff made its FOIA request. The court opined that "the need or desire to suppress the fact that the individual depicted in a mug shot has been booked on criminal charges is drastically lessened in an ongoing criminal proceeding." Id. at 97. It explicitly declined to consider whether Exemption 7(C) would apply in a situation such as that presently before the Court: "We need not decide today whether the release of a mug shot by a government agency would constitute an invasion of privacy in situations involving dismissed charges, acquittals, or completed criminal proceedings." *Id.*

Contrary to plaintiff's contentions, Mr. DeBartolo's decision to plead guilty reflects his desire to avoid the adverse public exposure, and further damage to his already tarnished public image, that would have accompanied prolonged criminal proceedings and, potentially, a term in prison. There is no justification to treat a criminal defendant's guilty plea as a waiver of his or her interest in suppressing a mug shot's graphic representation of that guilt.

The Times Picayune also argues that even if some defendants have a privacy interest in their mug shots, Mr. DeBartolo does not because he is a celebrity and a public figure. Again, the plaintiff confuses the right to privacy in a constitutional setting with the right to privacy at issue in the FOIA Exemption 7(C). While it is true that a public figure's privacy rights may be weighted differently than those of a private citizen under the First Amendment, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 343, 94 S.Ct. 2997, 3008–09, 41 L.Ed.2d 789 (1974), a person's status as a "public figure" does not eviscerate his or her privacy interests under the FOIA. *See Nation Magazine, Washington Bureau v. United States Customs Service,* 71 F.3d 885, 894 n. 9 (D.C.Cir.1995) (Ross Perot's status as presidential candidate did not eliminate privacy interests for purposes of applying FOIA Exemption 7(C)). If the Times Picayune somehow obtained Mr. DeBartolo's mug shot, under most circumstances Mr. DeBartolo could not prevent the newspaper from publishing it. *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979). This does not mean that he does not have a privacy interest in preventing its release to the press in the first place. To the contrary, the newspaper's First Amendment right to publish photos of Mr. DeBartolo in its possession supports the view that the Marshals Service is protecting a privacy interest by denying the Times Picayune's FOIA request.

Indeed, the fact that Mr. DeBartolo is a well-known person may well exacerbate

the privacy intrusions that "could reasonably be expected" to result from public dissemination of his mug shot. Rival businessmen "could reasonably be expected" to use Mr. DeBartolo's conviction and circulate his mug shot to perpetuate his criminal association. Such efforts "could reasonably be expected" to trigger additional publicity about Mr. DeBartolo, including the reappearance of his mug shot in the media. "[R]enewed publicity brings with it a renewed invasion of privacy. The renewed intrusion is subject, in its own right, to FOIA protection." *Halloran*, 874 F.2d at 322 n. 10, *quoting Bast v. U.S. Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981). This is only one example of how the dissemination of the mug shot "might damage reputations or lead to personal embarrassment and discomfort." *Halloran*, 874 F.2d at 320.

The Times Picayune also argues that Mr. DeBartolo has no privacy interest in preventing the disclosure of his mug shot because of his current notoriety as a convicted offender who may have received a generous plea bargain. It attempts to distinguish this case from *The New York Times Co. v. NASA*, 782 F.Supp. 628 (D.D.C.1991) ("*NASA*"). Following remand from an *en banc* Circuit Court decision, 920 F.2d 1002 (1990), the district court in *NASA* declined to order the space agency to produce a tape recording of the Challenger crews' final communications before the ill-fated space shuttle exploded, NASA previously had released a transcript of the tape, but not the tape itself. Applying reasoning that has relevance to the mug shot at issue here, the court found that although what the astronauts said may not have implicated privacy interests, "how the astronauts said what they did, the very sound of the astronauts' words, does constitute a privacy interest." *NASA*, 782 F.Supp. at 631. The Times Picayune argues that *NASA* involved "audio tapes of ... American heroes in the final moments of their lives," and not "a photograph of a man who has arguably bargained his way out of a prison sentence

for being involved in a public corruption scheme." Pl's Mem., Feb. 9, 1999, at 14. Evidently, the plaintiff would have agencies evaluate the merits of an individual's character, or profession, when determining whether that person has a privacy interest worth protecting. Nothing in the FOIA exemption requires, or even permits, this type of consideration to play a role in determining whether a privacy interest exists.

For all of the above reasons, this Court concludes that disclosure of Mr. DeBartolo's mug shot could reasonably be expected to constitute an invasion of his personal privacy.

## C. *Is There a Viable Public Interest in Disclosure of Mr. DeBartolo's Mug Shot?*

Having found a personal privacy interest in nondisclosure of Mr. DeBartolo's mug shot, the Court must now consider whether a viable public interest exists for its disclosure. *Halloran*, 874 F.2d at 319.

 Several well settled principles guide this Court's evaluation of the public interests allegedly involved in disclosure of Mr. DeBartolo's mug shot. First, the FOIA is designed to "shed[ ] light on an agency's performance of its statutory duties," or otherwise keep citizens informed about "what their government is up to." *Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481–82. Disclosing information about private citizens that happens to be in government files does not foster that purpose if it reveals little or nothing about the agency's own conduct. Second, a court must measure the public interest of disclosure solely in terms of this objective, rather than on the particular purpose for which the document is being requested. Therefore, the identity and motive of the requesting party is irrelevant. *Id.* at 772, 109 S.Ct. at 1481; *Halloran*, 874 F.2d at 323. Third, a FOIA requester does not create a legitimate public interest in disclosure through mere

speculation about potential public interests that possibly could be served. *United States Department of State v. Ray,* 502 U.S. 164, 179, 112 S.Ct. 541, 549, 116 L.Ed.2d 526 (1991) (mere speculation about hypothetical public benefits cannot outweigh significant privacy interests for purposes of Exemption 6). Finally, under *Halloran,* merely stating an abstract public interest is insufficient: the Court must analyze how that interest would be served by compelling disclosure in the particular case. *Halloran,* 874 F.2d at 323.

■ The Times Picayune advances several ways in which disclosure of the mug shot would advance the public interest by opening agency action to the light of public scrutiny. It begins with the unrefutable observation that the public has a broad legitimate interest in all aspects of the criminal justice system. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 571, 100 S.Ct. 2814, 2824, 65 L.Ed.2d 973 (1980). It then proceeds to list several hypothetical situations in which disclosure of mug shots could serve this public purpose. For instance, law enforcement agencies often release mug shots so that citizens who recognize the subject may come forward with information to assist in their law enforcement duties. A compilation of mug shots can expose a racial or ethnic bias in the government's arresting process. Mug shots also can reveal evidence of possible abuse of prisoners, or refute false allegations of such abuse, and they are helpful to ensure that confessions are not physically coerced. In this specific case, the Times Picayune argues that the release of Mr. DeBartolo's mug shot is evidence that his wealth and status has not exempted him from the procedures utilized in connection with all individuals charged with federal crimes. Conversely, the photograph may demonstrate that Mr. DeBartolo did not take the process seriously or

that the government allowed him leeway in the circumstances of photographing him that would not be afforded other prisoners. Pl's Mem., Feb. 9, 1999, at 16.

Assuming, for the sake of argument, that the FOIA is designed to advance all of these undeniably legitimate interests, disclosure of Mr. DeBartolo's mug shot would not contribute to any of them. The facts surrounding the investigation of Mr. De-Bartolo and his plea agreement have received extensive news coverage throughout the country.[4] The plea bargain itself is a public document. There have been no allegations of racial or ethnic bias involving Mr. DeBartolo, and if there were, his mug shot viewed alone would prove nothing. Similarly, photographs and television coverage of Mr. DeBartolo before and after his plea and processing are more than adequate to assess whether he was physically abused at the hands of the Marshals Service, of which there has also been no allegation. Finally, the fact that the plaintiff argues that the mug shot will show either that Mr. DeBartolo did, or did not, receive preferential treatment underscores the hypothetical nature of the asserted public interest at issue in this case.

The Court does not intend in any way to belittle the public interests asserted by the Times Picayune. The Court recognizes, as did the Sixth Circuit in *Detroit Free Press,* that "[p]ublic disclosure of mug shots in limited circumstances can ... serve to subject the government to public oversight." *Detroit Free Press,* 73 F.3d at 98 (listing several hypothetical examples of such circumstances, but, having concluded that the subjects of the mug shots in that case had no privacy interest in the photographs, ultimately declining to engage in a balancing test). However, no such circumstances exist in this case. Furthermore, the Court is cognizant of the fact that the identity of the requesting party has no

---

**4.** Counsel for the Times Picayune submitted copies of the text of 130 articles from the Times Picayune that discuss Mr. DeBartolo's role in the Edwards investigation. This "ex-

hibit" filled more than 300 pages. The Court appreciates the effort, but in the future, citations will suffice.

bearing on the merits of his or her FOIA request. *Reporters Committee*, 489 U.S. at 771, 109 S.Ct. at 1481. If the general public has a legitimate, albeit abstract, interest in the requested information such that disclosure is warranted, "disclosure must be made despite the fact that the party actually requesting and receiving the information may use it for less-than-lofty purposes." *Halloran*, 874 F.2d at 323. Putting aside the fact that the Times Picayune is the requesting party, and that printing the mug shot would invariably help sell newspapers, the Court still cannot discern how disclosure of Mr. DeBartolo's mug shot would serve the purpose of informing the public about the activities of their government. *See Reporters Committee*, 489 U.S. at 774, 109 S.Ct. at 1482 (finding that disclosure may serve to "provide details to include in a news story, but in itself . . . is not the kind of public interest for which Congress enacted the FOIA."). In sum, under the circumstances of this case disclosure of Mr. DeBartolo's mug shot would not serve any of the public interests the FOIA is designed to protect.

### D. Assuming a Viable Public Interest, Would Disclosure of Mr. DeBartolo's Mug Shot Constitute an "Unwarranted" Invasion of Privacy?

██ Even if there were a viable public interest in the public disclosure of Mr. DeBartolo's mug shot, the Court still would have to balance the privacy interest in not releasing the mug shot against the public interest in its disclosure. *Reporters Committee*, 489 U.S. at 762, 109 S.Ct. at 1476. At this stage, the Court may consider the extent of a particular individual's privacy interest in his or her mug shot. The plaintiff uses words such as "significant," "substantial," and "meaningful" to describe the type of privacy interest that must be implicated to trigger Exemption 7(C). However, most of the cases plaintiff cites in this regard involved the FOIA Exemption 6, which places a higher burden on agencies for withholding information than Exemption 7(C).[5] More importantly, courts applying both exemptions repeatedly have held that even a modest privacy interest may outweigh a nonexistent or minimal public interest. *See, e.g. Halloran*, 874 F.2d at 322 (Exemption 7(C)) (a "small and potentially uncertain invasion of privacy" may nonetheless be "unwarranted" if there are no public interests supporting disclosure of the particular information); *United States Department of Defense v. Federal Labor Relations Authority*, 510 U.S. at 500, 114 S.Ct. at 1015 (Exemption 6) (a "very slight privacy interest" may outweigh a "virtually nonexistent" public interest); *Dunkelberger v. Department of Justice*, 906 F.2d 779, 781 (D.C.Cir.1990) (Exemption 7(C)) (a "minimal" privacy interest, "however slight," outweighs a nonexistent public interest); *National Association of Retired Federal Employees v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989) (Exemption 6) ("[s]omething, even a modest privacy interest, outweighs nothing every time").[6]

---

5. The FOIA Exemption 6, 5 U.S.C. § 552(b)(6), permits government agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." In *United States Department of Defense v. Federal Labor Relations Authority*, the Supreme Court explained:

 Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that "could reasonably be expected to constitute" an invasion of privacy that is "unwarranted," while the latter bars any disclosure that

"would constitute" an invasion of privacy that is "clearly unwarranted."
*United States Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 496 n. 6, 114 S.Ct. 1006, 1013 n. 6, 127 L.Ed.2d 325 (1994).

6. Plaintiff correctly points out that the court in *Horner* sought to identify a "substantial, as opposed to a *de minimis*, privacy interest." *Horner*, 879 F.2d at 874. However, that case applied Exemption 6, which tilts more heavily toward disclosure than Exemption 7(C). *See supra* n. 5; *Ripskis v. Dept. of HUD*, 746 F.2d

In this case, disclosure of the mug shot could reasonably be expected to constitute an invasion of Mr. DeBartolo's personal privacy. Even if the privacy interest is not significant—a finding that this Court does not make—the public interest in disclosure of Mr. DeBartolo's mug shot is, at best, purely speculative. Recalling that "something ... outweighs nothing every time." the Court determines that the privacy interest in non-disclosure outweighs any public interest. Therefore, disclosure in this case is unwarranted.

## III. *CONCLUSION*

The Marshals Service properly invoked FOIA Exemption 7(C) because Mr. DeBartolo's mug shot was taken for law enforcement purposes, and its disclosure could reasonably be expected to constitute an unwarranted invasion of Mr. DeBartolo's personal privacy. Accordingly, **IT IS ORDERED THAT** Plaintiff's Motion for Partial Summary Judgment (Rec.Doc. 9) is DENIED and Defendant's Motion for Summary Judgment (Rec.Doc. 16) is GRANTED.

1, 3 (D.C.Cir.1984) (Exemption 6) ("the 'clearly unwarranted' language of Exemption 6 weights the scales in favor of disclosure"). Additionally, while the *Horner* court required more than a *de minimis* privacy interest to trigger balancing, a minimal privacy interest outweighed a nonexistent public interest in the court's application of the balancing test. *Id.* at 879.