Dear John R. Leopold
Your predecessor requested our opinion concerning disclosure of "mug shots" in the possession of the Anne Arundel County Police Department — i.e., booking photographs of individuals who have been arrested by the police department. In particular, must the police department disclose a mug shot in response to a request under the Public Information Act? Or do the laws governing "criminal history record information" preclude the police department from disclosing the photograph?
In our opinion, a mug shot in the possession of a police department is not subject to the restrictions placed on "criminal history record information" by State and federal law. Rather, it should be treated as an investigatory record of the police department. Thus, it should be disclosed in response to a Public Information Act request unless the department determines that disclosure would be contrary to the public interest.
 I Background
A. Mug Shots
"Mug shot" is the term used for a photograph taken as part of the booking process of a person who has been arrested. See Black's LawDictionary p. 1040 (8th ed. 2004). The practice of taking photographs of arrested individuals began in the early part of the 20th century as police departments adopted the Bertillon system of criminal identification. See Downs v. Swann, 111 Md. 53, 57-58, 73 A. 653
(1909).[1] The rationale for preserving a record of the appearance of the individual was that "it is necessary to the proper enforcement of police regulations and the securing of the prisoner for trial that a full description of him should be had in order that, if he should undertake to become a fugitive from justice, the police and detective department may be in possession of such information as will enable them to have him identified, wherever he may be found . . ." Id. at 58-59.
Typically, a mug shot consists of frontal and side views of the head ("mug") of the individual. It may have a backdrop with lines showing the individual's height and a sign with an identification number assigned to the individual. A mug shot is typically retained by the police department or law enforcement agency that took the photograph and does not become a part of the court files relating to the arrest.
A mug shot may become part of a "wanted" poster circulated to the public that identifies a fugitive sought by a law enforcement agency for a future offense or investigation. A mug shot may be used in the course of an investigation of other crimes — for example, as part of a photospread shown to an eye witness to a crime or in a face book reviewed by crime victims. The photograph may later be admitted into evidence at a criminal trial to verify an identification that was made.See Annotation, Admissibility, and prejudicial effect of admission, of"mug shot," "rogues' gallery" photograph, or photograph taken in prison,of defendant in criminal trial, 30 ALR 3d 908, § 2 (1970, 2007 Supp.).
B. Request for Mug Shots from County Police Department
A local new spaper raised the issue of public access to mug shots at the County Police Department.[2] The Police Department requested advice from the County Office of Law, which provided a memorandum analyzing the issue. The memorandum reasoned that, because a mug shot is information associated with an arrest, it constitutes criminal history record information ("CHRI"), which may only be disseminated for specific purposes. The memorandum acknowledged that there are exceptions that allow the public release of certain information such as wanted posters, but that a mug shot does not fall within any of those exceptions.Id. Accordingly, the County Office of Law concluded that the photographs could not be provided to the press. Memorandum from Hamilton F. Tyler, Senior Assistant County Attorney, to P. Thomas Shanahan, Chief of Police (March 29, 2006). Your predecessor subsequently requested this opinion.[3]
 II Public Information Act
Access to public records in Maryland is governed by the Public Information Act ("PIA"), codified at Annotated Code of Maryland, State Government Article ("SG"), § 10-611 et seq. The PIA grants the public a broad right of access to public records in the custody of the State or a local government. See SG §§ 10-612, 10-613(a); Massey v. Galley,392 Md. 634, 642, 898 A.2d 951 (2006).
The phrase "public record" includes an original and any copy of any documentary material, regardless of medium, that is "made by a unit or instrumentality of the State government or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business." SG § 10-611(g). The statute lists a number of examples of the many forms that a public record may take. Among those is a photograph. SG § 10-611(g)(ii)8. Thus, there is no question that a photograph of a suspect taken by a police department, or in the custody of the department, is a public record subject to the PIA. Pemberton v. Bethlehem Steel Corp., 66 Md. App. 133,168, 502 A.2d 1101, cert. denied, 306 Md. 289, 508 A.2d 488, cert.denied, 479 U.S. 984 (1986).
Not all "public records" are available to the public. There are a number of exceptions to the PIA's general rule that public records are accessible by the public. First, the PIA defers to various types of law — common law privileges, federal and State statutes, federal regulations, court rules, court orders — that may preclude disclosure of a record. SG § 10-615. Second, the PIA itself requires that certain records and specified categories of information be withheld. SG §§ 10-616 and 10-617. With respect to certain types of records, the PIA gives the custodian of the record discretion to deny access to the record, or severable portions of the record, if the custodian "believes that inspection . . . by the applicant would be contrary to the public interest." SG § 10-618. These exceptions to the general rule of disclosure are not mutually exclusive. Thus, more than one exception may apply to a particular record.[4] Office of the Attorney General v.Gallagher, 359 M d. 341, 753 A .2d 1036 (2000). Finally, the PIA includes a catch-all provision that, in the event no exception applies and the official custodian[5] of the record believes that its disclosure "would cause substantial injury to the public interest," the official custodian may temporarily withhold the record and seek a court order preventing disclosure. SG § 10-619.
In our view, two of the exceptions to disclosure under the PIA potentially apply to mug shots. If a mug shot is considered CHRI, then the State statute and federal regulations restricting the dissemination of CHRI may limit its disclosure under the PIA pursuant to SG § 10-615(2)(i) and (ii).[6] In addition, if a mug shot is considered an investigatory record, the PIA's discretionary exception set forth in SG § 10-618(f) would also apply.
 III Analysis
A. Restrictions on Disclosure of Criminal History RecordInformation
The statute establishing the Maryland Criminal Justice Information System ("CJIS") restricts the dissemination of CHRI in the possession of law enforcement agencies such as local police departments. Annotated Code of Maryland, Criminal Procedure Article ("CP"), § 10-201 etseq. That law derives from, and incorporates, a related federal statute and regulations. As explained above, the PIA incorporates restrictions on disclosure of public records that are imposed by "other law." SG § 10-615. Thus, if mug shots fell within the definition of CHRI, a police department responding to a PIA request for such photographs must comply with the restrictions of the State CJIS statute and related federal laws.[7]
 1. Federal Law
The federal law governing state CHRI systems is linked to the federal monetary assistance that has supported the creation and maintenance of those systems. Since 1973, federal law has attached various conditions to this financial support, including requirements that State systems include disposition as well as arrest data, that the information be kept current, that "the security and privacy of all information is adequately provided for," that the information be used only for "law enforcement and criminal justice and other lawful purposes," and that the State have procedures to correct inaccurate or incomplete information.42 U.S.C. § 3789g(b).
The Department of Justice has issued regulations intended to "assure that [CHRI] wherever it appears is collected, stored, and disseminated in a manner to ensure the accuracy, completeness, currency, integrity, and security of such information and to protect individual privacy."28 CFR § 20.1. The regulations define CHRI as "inform ation collected by criminal justice agencies on individuals consisting of identifiable descriptions and notations of arrests, detentions, indictments, information, or other formal criminal charges, and any disposition arising therefrom, including acquittal, sentencing, correctional supervision, and release. . . ." 28 CFR § 20.3(d).[8] The phrase "criminal justice agency" includes the courts and agencies involved in the "administration of criminal justice," such as a police department.28 CFR § 20.3(b), (g); see also 28 CFR Part 20 Appendix (discussion of § 20.3(g)). The regulations provide separate rules for state record systems and records maintained by the Federal Bureau of Investigation ("FBI").[9]
The regulations related to state record systems apply to any state or local agency that collects, stores, or disseminates CHRI.[10]28 CFR Part 20, Subpart B ("State and Local Criminal History Record Information Systems"). T he regulations establish standards for state CHRI systems, including the completeness, accuracy, dissemination, and security of such records. Complete and accurate records are to be maintained in a "central repository." 28 CFR § 20.21(a). A criminal justice agency is to query the central repository before disseminating any CHRI "unless it can be assured that the most up-to-date disposition data is being used."Id.
The regulations draw a distinction between CHRI that relates to pending proceedings and proceedings that have resulted in a conviction, on the one hand, and CHRI that relates to proceedings that did not result in a conviction, on the other. With respect to the former category, the federal regulations place no limitations on dissemination. A state m ay routinely make available conviction data and pending charges, if it chooses to do so, or it may limit dissemination.28 CFR Part 20 Appendix.
With respect to "nonconviction data" — generally arrests or other proceedings that have not resulted in a conviction[11] — the regulations require that states set some parameters on the dissemination of that class of CHRI, but ultimately defer to the states on what those parameters should be. 28 CFR § 20.21(b); see also 28 CFR Part 20
Appendix. The regulations allow dissemination of nonconviction data to criminal justice agencies for criminal justice administration and criminal justice agency employment. 28 CFR § 20.21(b)(1). Such data may also be disseminated as part of an agreement for services related to the administration of criminal justice and for research and statistical purposes. 28 CFR § 20.21(b)(3) and (4). Finally, nonconviction data may be disseminated to "[i]ndividuals and agencies for any purpose authorized by statute, ordinance, executive order, or court rule, decision, or order, as construed by appropriate State or local officials or agencies[.]" 28 CFR § 20.21(b)(2). However, the regulations make clear that they do not mandate that a state disseminate such information and that state officials are to determine whether dissemination is required by local law. 28 CFR § 20.21(c)(3). The regulations thus give states substantial discretion to adopt policies that severely limit the availability of nonconviction CHRI or, on the other hand, that make it widely available. As the Department of Justice commentary to the regulations explains, "a State could place a total ban on dissemination [of nonconviction data] if it so wished. The State could, on the other hand, enact laws authorizing any member of the private sector to have access to nonconviction data." 28 CFR Part 20 Appendix.
Any dissemination of CHRI to a noncriminal justice agency is to be limited to the purpose for which it was given. 28 CFR § 20.21(c)(1). The existence of CHRI is not to be confirmed for any person or agency if that person or agency is not eligible to actually receive the information. 28 CFR § 20.21(c)(2).
The federal regulations do not apply to CHRI contained in certain types of records, including "[p]osters, announcements, or lists for identifying or apprehending fugitives or wanted persons" and "[o]riginal records of entry such as police blotters maintained by criminal justice agencies, compiled chronologically and required by law or long standing custom to be made public . . ." 28 CFR § 20.20(b)(1) and (2).[12] Furthermore, the regulations do not prohibit a criminal justice agency from publicly disclosing CHRI related to an offense for which an individual is currently within the criminal justice system.28 CFR § 20.20(c).[13]
 2. Maryland Criminal Justice Information System
In 1976, the General Assembly enacted the CJIS statute to create a uniform management system for managing CHRI in Maryland. Chapter 239, Laws of Maryland 1976, now codified at Annotated Code of Maryland, Criminal Procedure Article ("CP"), § 10-201 et seq. The Legislature expressed an intent "to create and maintain an accurate and efficient criminal justice information system" to serve the needs of criminal justice units for accurate and current information and to ensure the "right of persons to be free from improper and unwarranted intrusions into their privacy." CP § 10-203(1)(ii)-(iii). The legislation was designed to ensure that Maryland's system complied with the federal regulations. CP § 10-203(1)(i); see also Memorandum of Thomas Peddicord, Governor's Legislative Office, to General Assembly concerning Senate Bill 415 and House Bill 1106 (February 12, 1976) at p. 3; Memorandum of Thomas Peddicord, Governor's Legislative Office, to General Assembly concerning House Bill 1106 (April 1, 1976) at p. 1.
The statute established a CJIS Central Repository in the Department of Public Safety and Correctional Services ("DPSCS"). CP § 10-213.[14]
The General Assembly accorded the Secretary of DPSCS broad authority to adopt regulations relating to executive branch agencies and local criminal justice agencies that, among other things, "regulate the collection, reporting, and dissemination of [CHRI] . . ." CP § 10-221(a)(1) and (b)(1).[15] The Secretary has exercised that authority to adopt regulations that reiterate and elaborate on the CJIS statute. See COMAR 12.15.01.
Each criminal justice unit — which by definition includes a police department[16] — must report CHRI to the CJIS Central Repository according to specified time tables and procedures. CP § 10-214. The Secretary of DPSCS specifies "content, format, and media for CHRI reported to the Central Repository." COMAR 12.15.01.09. A police department or other criminal justice unit is free to maintain CHRI that is more detailed than that reported to the Central Repository. CP § 10-214(e).
For purposes of the Maryland statute, CHRI is defined similarly to the federal regulations, but in somewhat greater detail. It is defined generally as "data that are developed or collected by a criminal justice unit about a person and that pertain to a reportable event." CP § 10-201(d)(1); see also COM AR 12.15.01.03B(3). A list of "reportable events" is itemized in CP § 10-215(a), with the proviso that the list may be expanded by the Secretary of DPSCS by regulation or by the Court of Appeals by rule.[17] Included on the list is "an arrest." CP § 10-215(a)(2). The statute excludes certain items from the definition of CHRI — among other things, data contained in intelligence or investigatory files, police work product records used only for police investigations, police blotter entries, and wanted posters. CP § 10-201(d)(3); COMAR 12.15.01.03B(3)(a), (c).
Whether CHRI is in the custody of the CJIS Central Repository or a local criminal justice agency, the general statutory restriction on the dissemination of CHRI is the same:
 Except in accordance with applicable federal law and regulations, a criminal justice unit and the Central Repository may not disseminate [CHRI].
CP § 10-219(a) (emphasis supplied). The DPSCS regulations similarly state:
 The Central Repository and other criminal justice agencies may not access or disseminate [CHRI] except in accordance with federal and State laws and regulations and the regulations promulgated pursuant to [CP § 10-221].
COMAR 12.15.01.10A.
The term "disseminate", which is not defined in the federal regulations, has parallel, though not identical, definitions in the State statute ("to transmit [CHRI] in any form") and regulations ("to transmit CHRI in any oral or written form"). CP § 10-201(g); COMAR12.15.01.03B(7). Transmissions within a criminal justice unit, to the Central Repository, or to another criminal justice unit for subsequent proceedings relating to the same crime are excluded from the definition of dissemination. Id. In addition, the regulations allow disclosure of CHRI by a law enforcement agency "for or during the conduct of a public judicial proceeding." COMAR 12.15.01.03.B(7) (excluding such disclosures from definition of "disseminate"); see also Criminal History Records Information User Agreement (revised 10/25/05) Appendix, p. 13.
Under the DPSCS regulations, a noncriminal justice agency or individual may not normally obtain CHRI from a criminal justice agency, other than the CJIS Central Repository. COMAR 12.15.01.10B.[18] The regulations set forth in some detail the circumstances under which the Central Repository will disseminate CHRI or authorize a criminal justice agency, such as a police department, to do so. COMAR 12.15.01.10 through12.15.01.13.
3. Whether Mug Shots are CHRI
The Maryland CJIS statute does not explicitly address the status of mug shots in the possession of a police department.[19] Nor have the Maryland courts explicitly considered whether such photographs are CHRI.[20] In our view, they are not.
Subject to certain exceptions, the CJIS statute defines CHRI as "data . . . collected by a criminal justice unit about a person and that pertains to a reportable event." CP §§ 10-201(d)(1) (emphasis added). An arrest is a reportable event. CP § 10-215(a)(2). Is a booking photograph properly characterized as "data" pertaining to that event?
A common dictionary definition of "data" is "information, esp. information organized for analysis or used as the basis for decision-making." Webster's II, New College Dictionary (1995) at pp. 287-88. Similarly, the definition of CHRI in the federal regulations refers to "information . . . on individuals consisting of identifiable descriptions and notations of arrests. . . ." 28 CFR § 20.3(d). This, of course, simply brings us back to the "I" in CHRI, which stands for "information." Perhaps the key point here is that CJIS statute protects certain information, not particular records.
In our view, the information that the CJIS statute and related laws are intended to protect concern the history of the individual's encounters with law enforcement, not his or her physical appearance. The CJIS statute and regulations do not appear to contemplate mug shots as "data" encompassed within CHRI. The CJIS statute explicitly includes certain identifying information — i.e., fingerprints — within the definition of CHRI. CP §§ 10-201(d)(2)(iii), 10-216. Fingerprints have long been the key component ensuring the accuracy of criminal history records.[21] Pursuant to CP § 10-221(b)(1) and COMAR 12.15.01.09, the Secretary of DPSCS specifies the format for submission of CHRI to the central repository. The Secretary requires agencies to submit CHRI with identifying information in the form of fingerprints. COMAR 12.15.01.09-1.
The CJIS statute does not require arresting agencies to take or submit photographs and other identifying information as part of the CHRI submitted to the State's Central Repository.[22] Nor is any mention made in the regulations of submitting photographs to the Central Repository. This omission strongly suggests that such photographs are not CHRI. See 1990 Va. Op. Atty. Gen. 9 (August 30, 1990),1990 WL 511491 (observing that Virginia law does not require booking photographs to be submitted to that state's central repository and concluding that "mug shots" are not CHRI); Tex. Atty. Gen. Op. OR2002-3469,2002 WL 32052787 (June 26, 2002) (concluding that mug shots do not fit the definition of CHRI under either federal or Texas law).
Moreover, a criminal justice agency such as a police department is ordinarily required to query the Central Repository before disseminating CHRI to a noncriminal justice entity or individual. 28 CFR § 20.21(a); COMAR 12.15.01.10B. It seems very unlikely that the drafters of those regulations contemplated that a police department would be required to follow that procedure before using mug shots in connection with an investigation. For similar reasons, a California court has held that a mug shot is not "information" within the meaning of California's CHRI statute. People v. McCloud, 146 Cal. App. 3d 180, 182-83,194 Cal. Rptr. 75 (Ct.App. 1983). The court reasoned that the absence of an explicit reference to mug shots in the definition of CHRI evidenced a legislative intent not to encompass such photographs:
 The legislative omission was patently intentional, for if it were not so, criminal investigation would become well nigh impossible, and photographic lineups necessarily forbidden. (Indeed, few if any post offices, or federal buildings or banks, lack a prominent display of mug shots of "wanted" criminal suspects).
146 Cal. App. 3d at 183.
With the advent of digital photography, it might be argued that the term "data" literally encompasses photographs. The electronic information from which a digital photograph is printed is often referred to as "data" — e.g., "computer data", "digital data." Moreover, a digital photograph has the potential to be easily transmitted to a central repository with other identifying information concerning a reportable event. Although mug shots have not been historically centralized, as technology evolves, mug shots captured at the time of booking are likely to become a routine part of centralized record systems.[23] The Legislature may want to consider whether to address more explicitly the status and use of such photographs under the CJIS statute.
In any event, regardless of whether a photograph is "data" for purposes of the Maryland CJIS statute, that statute excludes from the definition of CHRI "data contained in intelligence or investigatory files or police work product records used only in police investigations." CP § 10-201(d)(3)(i); see also COMAR12.15.01.03B(3)(a). Mug shots have long been employed in connection with investigations and as evidence at criminal trials. Indeed, their use has been the subject of numerous judicial opinions.See, e.g., Straughn v. State, 297 Md. 329, 333-36, 465 A.2d 1166 (1983) (upholding introduction of mug shots used as part of extra-judicial identification of defendant by witness); Annotation, Admissibility, andprejudicial effect of admission, of "mug shot," "rogues' gallery"photograph, or photograph taken in prison of defendant in criminaltrial, 30 ALR 3d 908 (collecting cases on admissibility of mug shots in a criminal trial);[24] see also Pemberton v. Bethlehem SteelCorp., 66 Md. App. at 169 (describing the use of mug shots for investigative purposes). Indeed, the original purpose for collecting mug shots was in anticipation of their use to apprehend fugitives. Thus, in our view, such photographs are excluded from the definition of CHRI and the CJIS statute is not "other law" under SG § 10-615 that would not prohibit a police department from disclosing mug shots.
B. Application of Investigatory Records Exception 1. Maryland Law
Under SG § 10-618, a custodian may withhold all or part of a public record that is the subject of a PIA request if the record falls into certain categories and the custodian believes that disclosure would be "contrary to the public interest." SG § 10-618(a). One of those categories relates to certain law enforcement records. It reads, in relevant part:
 (1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:
 (i) records of investigations conducted by . . . a police department, or a sheriff;
 (ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or
 (iii) records that contain intelligence information or security procedures of . . . a police department, a State or local correctional facility, or a sheriff.
SG § 10-618(f)(1). The PIA provides that such records may be withheld from a "person in interest" — essentially, the person who is the subject of the record[25] — only if disclosure of the record would result in one of seven listed harms:
 (i) interfere with a valid and proper law enforcement proceeding;
 (ii) deprive another person of a right to a fair trial or an impartial adjudication;
 (iii) constitute an unwarranted invasion of personal privacy;
 (iv) disclose the identity of a confidential source;
 (v) disclose an investigative technique or procedure;
 (vi) prejudice an investigation; or
 (vii) endanger the life or physical safety of an individual.
SG § 10-618(f)(2). Of course, each of these listed concerns would also justify withholding a record from a requester who does not qualify as a "person in interest."
In Pemberton, 66 Md. App. 133, the Court of Special Appeals discussed the possible application of the PIA exception for investigatory records to mug shots. In that case, a union official brought suit against Bethlehem Steel Corporation and various individuals for invasion of privacy and other causes of action. In support of his claim for invasion of privacy, Pemberton alleged that the defendants had sent union members copies of documents relating to his prior criminal conviction, including a mug shot. Pemberton contended that the mailing of his mug shot constituted unwarranted publicity of the details of his private life. Id. at 161-62.
The Court of Special Appeals affirmed the trial court's dismissal of that claim. It held that the circulation of court records related to the conviction could not support the claim, because court records are "open to public inspection" and therefore could not be "private facts."66 Md. App. at 166-68. The Court then turned to whether a mug shot is similarly "open to public inspection." The Court first determined that a mug shot is a public record and that, under the PIA, public records are ordinarily open to public inspection. It then considered whether any exception to the PIA would shield a mug shot from public inspection. The Court concluded that none of the mandatory exceptions applied[26] and discussed in detail only the exception for investigatory records:
 It is not at all clear that a "mug shot" necessarily constitutes or is part of a "record of investigation" so as to be permissibly excludable in the first instance. But assuming, arguendo, that it is of that character, the fact is that it is nevertheless a public record that is not per se excluded from public access. Many of these "mug shots" are retained for comparison purposes; victims of crime often are invited to look through books or arrays of them in order to identify their predators.
Id. at 169 (emphasis in original). The Court held that it could not regard Pemberton's mug shot "as being a private fact; it is, by law, a public record to which the public may have had access." Id.
As the Court in Pemberton suggested, the premise that a mug shot is an investigatory record can be disputed. A photograph taken as part of a routine booking process might be analogized to an arrest log, described in a 1978 Attorney General opinion as "docket-type books containing the date of arrest, the name of the suspect arrested, the address, age, and race of the suspect, the name of the arresting officer, and the criminal charge and appropriate case number." 63Opinions of the Attorney General 543 (1978). In that opinion, Attorney General Burch concluded that arrest logs are not ordinarily records of investigation subject to the exception because they "merely reflect the end result of a police investigation . . . [and] . . . contain no information whatever concerning the actual investigation." Id. at 547;cf. Ala. Op. Atty. Gen. No. 2004-108 (2004), 2004 WL 771846 (equating a mug shot in a police database to the portion of an arrest report that would normally be available to the public under the Alabama open records law). If a mug shot is conceived of as simply one element of an arrest log, then the exception would not apply and it too would be publicly available. However, the 1978 opinion cautioned that, if investigatory material were included in an "arrest log," it would be subject to the investigatory records exception. 63 Opinions of the AttorneyGeneral at 547.
As outlined in Part I.A. of this opinion, a mug shot does not simply serve as a record of the culmination of a past investigation. The original impetus for taking such photographs was to create an identification record that police could use to apprehend the defendant if he or she became a fugitive on the charges underlying the arrest. Moreover, a mug shot is also designed to be used in future investigations, unrelated to that arrest, to identify suspects; it may be used in a wanted poster to help locate the individual if he or she becomes a fugitive on another charge. It is not simply a record of a past event involving law enforcement and a defendant, but is created as a tool for investigation. Thus, in our view, unlike most of the material that would be found in a traditional arrest log, such photographs are encompassed by the investigatory records exception. They are open to inspection in response to a PIA request unless the custodian can identify a public interest justifying non-disclosure.[27]
 2. Analogous Federal Cases
The PIA's exception for law enforcement records was modeled on a similar exception that appears in the federal Freedom of Information Act ("FOIA"). See 5 U.S.C. § 552(b)(7). Federal court applications of the FOIA exception are "ordinarily persuasive" authority with respect to parallel exceptions in the PIA. Faulk v. State's Attorney for HarfordCounty, 299 Md. 493, 506, 474 A.2d 880 (1984) (relying on federal case law construing 5 U.S.C. § 552(b)(7)).
The Department of Justice has taken the position in regulations that photographs of defendants in the possession of units of the Department should not be disclosed, except for a law enforcement purpose.28 CFR § 50.2(b).[28] When requests have been made for mug shots, the Department has invoked the law enforcement records exception under FOIA. In particular, the Department has argued that mug shots are protected from disclosure under what is commonly referred to as Exemption 7(C) to FOIA, formally codified as 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) allows a federal agency that is responding to a FOIA request to withhold:
 (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . .
 (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.
5 U.S.C. § 552(b)(7)(C).[29] Two federal courts have assessed the merits of that argument and have reached different results.
In Detroit Free Press, Inc. v. Department of Justice, 73 F.3d 93 (6th Cir. 1996), a newspaper sought the release of mug shots of eight defendants awaiting trial on federal charges. The United States Marshals Service (a unit of the Department of Justice) had declined to provide the photographs, on the ground that release of the photos would invade the personal privacy interests of the defendants. The Marshals Service relied on Exemption 7(C).
A divided panel of the Sixth Circuit held that the release of mug shots relating to pending criminal proceedings in which the names of the defendants had already been made public would not invade the privacy of the defendants. Detroit Free Press, 73 F.3d at 97. Moreover, even if there were some encroachment of the defendants' privacy interests, the Court said, there was a significant public interest in the disclosure of mug shots of defendants awaiting trial that could outweigh that interest. Id. at 97-98. The Court reasoned that disclosure of such photographs subjected the government to public oversight — it might reveal the government's error in detaining the wrong person or the circumstances surrounding the arrest of the individual. Id. at 98. Thus, the Court concluded, the disclosure of the mug shots would not constitute an "unwarranted invasion of personal privacy."[30]Id. (emphasis added). The Court explicitly declined to decide whether the release of mug shots in situations involving dismissed charges, acquittals, or completed criminal proceedings would amount to an invasion of privacy.Id. at 97.
A few years later, a federal district court in another circuit reached a different conclusion in slightly different circumstances. In TimesPicayune Publishing Corp. v. United States Department of Justice,37 F. Supp.2d 472 (E.D. La. 1999), a newspaper sought to obtain the mug shot of a prominent businessman who had recently pled guilty to criminal charges arising out of a political corruption investigation. As inDetroit Free Press, the United States Marshals Service denied the request, citing Exemption 7(C). The newspaper sued under FOIA, arguing that, because the photo was taken after the guilty plea, the photo was not taken for a law enforcement purpose, but rather an administrative purpose; thus, it was not even within the category of records covered by Exemption 7(C). The newspaper also contended that privacy was not at issue, given the public nature of the guilty plea and the prominence of the defendant. 37 F. Supp.2d at 475.
The district court rejected the first argument, noting that the Marshals Service is a law enforcement agency and holding that processing a defendant is part of its law enforcement duties. Id. The court further held that the defendant had a protectable privacy interest under FOIA in the photograph, and observed that mug shots "generally disclose unflattering facial expressions" and carry a "stigmatizing effect."Id. at 477. It distinguished the Detroit Free Press decision on the ground that the defendants in that case were awaiting trial while the case before it involved a completed criminal proceeding. Id. at 478. Although the court conceded that there might be a public interest in the disclosure of mug shots in some circumstances — encouraging witnesses to come forward, exposing racial or ethnic bias in prosecutions, and revealing or disproving prisoner abuse — it held that disclosure of the defendant's mug shot would not serve those interests. Id. at 480-81. The court concluded that the defendant's privacy interest outweighed any public interest in the case before it and upheld the refusal of the Marshals Service to disclose the photograph. We understand that the Department of Justice continues to enforce its policy not to provide mug shots to media organizations, except in the Sixth Circuit, where the Detroit FreePress decision is the law of the circuit. See U.S. Dep't of Justice, Bureau of Justice Statistics, Use and Management of Criminal HistoryRecord Information: A Comprehensive Report, 2001 Update, p. 54.
3. Summary
Although the Court of Special Appeals in Pemberton briefly analyzed the application of SG § 10-618(f) to mug shots, it did not definitively decide whether a mug shot would come within the purview of that exception to the PIA's general rule of disclosure. The federal court decisions applying a similar exception in FOIA apparently agree that mug shots related to current criminal proceedings fall within the type of records potentially covered by the related federal exception, but disagree to some extent on whether the disclosure of mug shots in such situations constitutes an unwarranted invasion of a defendant's privacy.
In our view, a mug shot that is part of a file related to a criminal proceeding is within the purview of SG § 10-618(f).[31] If the photograph is in the file of a police department, it constitutes a "record of investigation" covered by SG § 10-618(f)(1)(i). It may also be properly characterized as an "investigatory file compiled for [a] law enforcement, judicial, correctional, or prosecution purpose" under SG § 10-618(f)(1)(ii).
Thus, if a request is made under the PIA to a police department for mug shot, it should be disclosed unless the custodian can articulate a reason why it would be "contrary to the public interest" to allow inspection of the photograph. SG § 10-618(a). In many, if not most instances, there will be no public interest justifying a refusal to disclose a photograph. Indeed, as explained above, the practice of taking mug shots began in anticipation that they would be circulated to the public to help apprehend a fugitive.
On occasion, however, there may be a valid basis for the custodian to conclude that disclosure would be against the public interest. The list of the several reasons for which an agency may deny inspection of an investigative record to a "person in interest" provides a checklist of possible reasons that might apply in particular circumstances.See SG § 10-618(f)(2). For example, among the factors that the department might consider in making that determination is whether, in the particular circumstances, disclosure of a photograph of an individual's past encounter with law enforcement authorities would constitute an unwarranted invasion of privacy of the individual photographed. C f. SG § 10-618(f)(2)(iii). In most instances, there is unlikely to be any significant privacy concern. In other instances involving past cases in which the individual was acquitted or the charges were dropped, the privacy interest will be stronger in light of the embarrassing circumstances that the photograph depicts. In some cases, there may be a legitimate concern that disclosure of a full mug shot related to a pending case could affect the right of the individual to a fair trial or impartial adjudication.[32] Cf. SG § 10-618(f)(2)(ii). In cases involving an ongoing investigation, the disclosure of the photograph might prejudice the investigation. Cf. SG § 10-618(f)(2)(vi). In a particular case, disclosure of the appearance of an arrested individual who chose to cooperate with law enforcement authorities in an undercover investigation might disclose the identity of a confidential source (cf. SG § 10-618(f)(2)(iv)), or endanger the life or physical safety of an individual (cf. SG § 10-618(f)(2)(vii)).
 IV Conclusion
In our opinion, a mug shot in the custody of a police department is not subject to the restrictions placed on dissemination of CHRI by State and federal law. Rather, it should be treated as an investigatory record of the police department. Thus, a mug shot should be disclosed by the department in response to a PIA request unless the department determines that disclosure would be contrary to the public interest. Given the increasing use of digital photography and the potential for including digital photographs in criminal history databases, the Legislature may wish to address explicitly the status of mug shots under the Maryland CJIS statute.
Douglas F. Gansler
Attorney General
William R. Varga
Assistant Attorney General
Robert N. McDonald
Chief Counsel
Opinions and Advice
[1] The Bertillon system, devised by Alphonse Bertillon, a clerk in the Paris Prefecture of Police, relied on eleven physical measurements of an individual's body, together with photographs and notes of distinguishing marks, for its identification system. See Hutchings,Modern Forensics: Photography and Other Suspects, 9 Cardozo Stud. L. Literature 229, 234-35 (1997). The measurement system was later superseded by the taking of fingerprints, although the practice of taking photographs was retained. Id. at 236.
[2] The newspaper supported its position that mug shots should be publicly accessible with a legal analysis from the attorney representing the Maryland-Delaware -D.C. Press Association. See Letter from Alice Neff Lucan, Esquire, to Lori Blair, Anne Arundel County Office of Law (October 13, 2005).
[3] The Maryland-Delaware-D.C Press Association elaborated on its position in a letter to this Office. Letter from Alice Neff Lucan, Esquire, to Assistant Attorney General William R. Varga (August 21, 2006).
[4] On the other hand, many of these exceptions are trumped if another law makes the record accessible. See SG 10-616(a) ("Unless otherwise provided by law . . ."); SG § 10-617(a) (same); SG sect;10-618(a) (same).
[5] The PIA defines the "official custodian" to be the officer or employee who "is responsible for keeping the public record." SG § 10-611(d). The term "custodian" also includes any other authorized individual who has physical custody of a record. SG § 10-611(c).
[6] The question posed to us concerned booking photographs of adult arrestees in the possession of a police department, and we confine our analysis to the laws that may govern disclosure of those photographs. A mug shot of a juvenile taken in connection with his or her arrest would ordinarily be confidential pursuant to the statute governing juvenile records. Annotated Code of Maryland, Courts Judicial Proceedings Article, § 3-8A-27.
In addition, other laws may govern photographs of defendants in the possession of other criminal justice agencies. For example, Maryland law requires the Division of Correction to include a photograph of an inmate in the inmate's case record, but places specific restrictions on disclosure of the contents of the case record. See Annotated Code of Maryland, Correctional Services Article, §§ 3-601(a)(2), 3-602; 86Opinions of the Attorney General 226, 228-29 (2001); see also CowlesPublishing Co. v. Spokane Police Dep't., 987 P.2d 620, 624 (Wash. 1999) (en banc) (holding that similar Washington statute rendered jailhouse and arrest photos exempt from disclosure under public records statute).
[7] In 2005, Maryland joined the National Crime Prevention and Privacy Compact, enacted by Congress in 1998. CP § 10-237 et seq.; see also42 U.S.C. § 14611 et seq. That law governs interstate and federal-state exchanges of CHRI for noncriminal justice uses. The Compact does not reduce obligations of the State under the CJIS statute or the federal CHRI regulations with respect to its own records. CP § 10-246(c).
[8] The term does not include "identification information such as fingerprint records if such information does not indicate the individual's involvement with the criminal justice system."28 CFR § 20.3(d).
[9] Federal law requires the Attorney General of the United States to "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records" and to "exchange such records and information with, and for the official use of, . . . the States, cities, and penal and other institutions." 28 U.S.C. § 534(a)(1) and (4). The Attorney General has delegated responsibility for these records to the FBI. 28 CFR § 0.85(b). Because this opinion concerns mug shots that are part of a police department's own records and not photographs that a police department may have obtained through the FBI, we do not discuss the regulations pertaining to the latter records.
[10] The regulations apply to any agency whose collection, storage, or dissemination of CHRI has been supported by federal funding available after July 1, 1973, pursuant to Title I of the Omnibus Crime Control and Safe Streets Act. 28 CFR § 20.20(a); see also 63 Opinions of theAttorney General 197, 204 (1978).
[11] "Nonconviction data" is defined as follows:
 . . . arrest information without disposition if an interval of one year has elapsed from the date of arrest and no active prosecution of the charge is pending; information disclosing that the police have elected not to refer a matter to a prosecutor, that a prosecutor has elected not to commence criminal proceedings, or that proceedings have been indefinitely postponed; and information that there has been an acquittal or a dismissal.
28 CFR § 20.3(q).
[12] Also excluded is CHRI found in court records of public judicial proceedings, published court or administrative opinions and public judicial, administrative or legislative proceedings, records of traffic offenses maintained by motor vehicle agencies, and announcements of executive clemency. 28 CFR § 20.20(b)(3)-(6).
[13] The regulation reads:
 Nothing in these regulations prevents a criminal justice agency from disclosing to the public criminal history record information related to the offense for which an individual is currently within the criminal justice system. Nor is a criminal justice agency prohibited from confirming prior criminal history record information to members of the news media or any other person, upon specific inquiry as to whether a named individual was arrested, detained, indicted, or whether an information or other formal charge was filed, on a specific date, if the arrest record information or criminal record information disclosed is based on data excluded by [§ 20.20(b)]. The regulations do not prohibit the dissemination of criminal history record information for purposes of international travel, such as issuing visas and granting of citizenship.
[14] The statute also created the Criminal Justice Information Advisory Board to monitor the operation of CJIS and to make recommendations for regulations, rules and procedures governing the system. CP § 10-207 et seq.
[15] The statute also authorizes the Court of Appeals to promulgate similar rules for the judicial branch. The Court has adopted rules concerning the transmittal of CHRI by the courts to the Central Repository and the inspection of CHRI in court records. See Maryland Rules 16-308, 16-503.
Other regulations govern criminal history checks for particular purposes such as working with children, working in adult dependent care programs, and holders of commercial driver licenses who transport hazardous material. COMAR 12.15.02-12.15.04. Numerous State statutes also require criminal background checks in connecting with various licensing schemes and public sector employment.
[16] "Criminal justice unit" is defined in some detail in CP § 10-201(f).
[17] In order to avoid duplicate reporting, the statute allows the Secretary and the Court to specify reporting of particular events by particular units. CP § 10-215(b).
[18] Subject to an exception concerning pending criminal proceedings, an individual has the right to access his or her own CHRI, including information in the custody of a local criminal justice agency and a right the challenge the completeness, contents, accuracy, or dissemination of such information. See CP §§ 10-222-10-227; COMAR12.15.01.05-.07.
[19] Some state statutes governing CHRI make clear that mug shots are publicly available. See Neb. Rev. Stat. Ann. § 29-3521(1) (stating that "photographs taken in conjunction with an arrest for purposes of identification of the arrested person" are publicly available). Some statutes specify that such photographs in the possession of the central repository may be made available to the public with the assent of the individual to whom the photograph pertains. See W. Va. Code, § 15-2-24(d); West Virginia State Police v. Taylor, 499 S.E.2d 283 (W.Va. 1997).
[20] The Court of Special Appeals implicitly held that mug shots are not CHRI when it asserted in Pemberton that such photographs are not covered by SG § 10-615, the part of the PIA which incorporates other State and federal statutes — such as the statutes governing CHRI — to the extent that they require an agency to deny inspection of a record.66 Md. App. at 168-69. However, the Court did not analyze the issue, presumably because the parties did not bring it to the Court's attention. See Part III.B. 1 of this opinion.
[21] The definition of CHRI in the federal regulations refers to "information . . . on individuals consisting of identifiable descriptions and notations of arrests. . . ." 28 CFR § 20.3(d).
[22] For example, State Law requires that a DNA sample be collected from an offender in connection with certain events that are also "reportable events" under the CJIS statute. See Annotated Code of Maryland, Public Safety Article ("PS"), § 2-504(a)(1); CP § 10-215(a)(11)-(12). We are not aware of any authority that indicates that such DNA data is subject to the restrictions on dissemination of CHRI. Rather the collection and use of such data is generally controlled by the DNA database law, which has its own restrictions on disclosure. PS § 2-501 et seq.; see 91 Opinions of the Attorney General 135 (2006).
[23] The FBI-operated NCIC 2000 System, providing federal, state, and local criminal justice agencies access to criminal justice information including CHRI, allows the entry of a mug shot in each individual's record. See http://www.fbi.gov/hq/cjisd/ncic.htm. However, the Maryland Central Repository has not yet upgraded to the NCIC 2000 System. It is our understanding that few Maryland law enforcement agencies routinely submit mug shots to the Maryland CJIS unit at this time; many agencies lack the ability to submit mug shots electronically.
[24] The annotation notes that mug shots are generally used for identification purposes, but may be inadmissible at trial to the extent that they suggest to the jury that the defendant may have bad character or a prior criminal record. Annotation, 30 ALR 3d 908, § 2.
[25] The phrase "person in interest" is defined in somewhat greater detail in SG § 10-611(e).
[26] As noted in footnote 20 above, the Court did not analyze whether the State and federal laws restricting dissemination of CHRI made mug shots confidential under SG § 10-615(2)(i) and (ii), presumably because the parties did not raise the issue. The Court's statement that mug shots are not covered by the exceptions in SG § 10-615 is, of course, consistent with our conclusion in Part III.A. of this opinion.
[27] In a case that pre-dated the PIA, the Court of Appeals suggested that an adverse impact on an individual's reputation or privacy might counsel against disclosure of mug shots related to arrests that had not resulted in convictions. Downs v. Swann, 111 Md. 53, 64, 73 A. 653
(1909).
[28] The regulation states that "[p]ersonnel of the Department of Justice . . . should not make available photographs of a defendant unless a law enforcement function is served thereby."28 CFR § 50.2(b)(7).
[29] In permitting an agency to withhold records if production of those records "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the federal exemption may be broader than a similarly worded PIA exception that covers certain law enforcement records that "would . . . constitute an unwarranted invasion of personal privacy." Compare 5 U.S.C. § 552(b)(7)(C) with SG § 10-618(f)(2)(iii) (emphasis added); see also United States Department of Justice v.Reporters Committee for Freedom of the Press, 489 U.S. 749, 756 n. 9 (1989) (explaining that 1974 amendment substituting "could reasonably be expected to" for "would" in Exemption 7(C) was intended to create a more flexible standard for an agency to withhold records).
[30] An intermediate appellate court in Michigan reached a similar conclusion under the Michigan version of FOIA. See Detroit Free Press v.Oakland County Sheriff, 418 N.W.2d 124, 128-30 (Mich.Ct.App. 1987). In that case, the Michigan Court of Appeals held that the disclosure of a booking photograph to a newspaper would not violate either common law or constitutional principles of privacy and therefore a Michigan FOIA exemption for disclosures that "would constitute a clearly unwarranted invasion of . . . privacy" did not apply. Cf. Paul v. Davis,424 U.S. 693 (1976) (no constitutional violation when police distributed photographs of individuals arrested for shoplifting).
[31] Attorneys General in other states have reached similar conclusions under their respective public records laws. See 86 Ops. Cal. Atty. Gen. 132 (2003), 2003 WL 21672840 (mug shots in the possession of a county sheriff were disclosable subject to the investigatory records exemption of the California Public Records Act); XXI Kan. Op. Atty. Gen. 9 (1987), 1987 WL 290422 (mug shots may be withheld from disclosure under the Kansas Open Records Act under exemption relating to criminal investigation records); but cf. 1990 Va. Op. Atty. Gen. 9,1990 WL 511491 (mug shots must be disclosed in response to a request under Virginia FOIA, as the exemption for investigatory records explicitly excludes information "relative to the identity" of a subject).
[32] The possible adverse effect could be eliminated or minimized by redacting elements of the photograph that identify it as an arrest photo — e.g., the side view, a sign including an arrest number. *Page 51